FOURTH DIVISION

SEPTEMBER 23,1999

No. 1-98-2569

LEASE RESOLUTION CORPORATION, a ) APPEAL FROM THE 

Delaware corporation, as General ) CIRCUIT COURT OF

Partner, and DATRONIC EQUIPMENT ) COOK COUNTY

INCOME FUND XVII, L.P., a Delaware ) 

limited partnership, )

)

Plaintiffs-Appellants, )

)

v. ) No. 95 L 17332

)

DENNIS LARNEY and MIDLAND CAPITAL )

CORPORATION, an Illinois )

corporation, )

)

Defendants-Appellees )

)

) HONORABLE

) LEE PRESTON,

(Edmund J. Lopinski, Jr., ) JUDGE PRESIDING.

)

Defendant). )

JUSTICE HALL delivered the opinion of the court:

Plaintiffs, Lease Resolution Corporation (LRC), the successor general partner of a limited partnership, and Datronic Equipment Income Fund XVII (the Fund), the limited partnership, appeal from the dismissal with prejudice of their third amended complaint.  On December 15, 1995, LRC and the Fund filed a complaint against defendants Dennis Larney, Midland Capital Corporation (Midland), and Edmund J. Lopinski, Jr., the officers and agents of the former general partner, alleging that they had converted funds belonging to the Fund.  The circuit court dismissed plaintiff's third amended complaint with prejudice, finding that the cause of action was time barred and that plaintiffs had failed to allege sufficient facts to invoke the adverse domination doctrine.  In this case we are asked to decide whether Illinois will recognize the adverse domination doctrine.  We find that it will. 

In 1989, Datronic was the general partner of the Fund, which it managed pursuant to a limited partnership agreement.  Limited partnership interests in the Fund were offered as investments to the general public.  The limited partners of the Fund were passive investors who took no part in the management of the Fund.  The Fund was in the business of acquiring, managing, operating, and disposing of equipment leases.  The Fund had no employees of its own.  

Midland provided consulting and other services to Datronic in connection with the acquisition of equipment leases and equipment lease portfolios.  Larney was the sole shareholder and president of Midland.  Larney also served as a director of Datronic until his resignation on December 31, 1988.  Lopinski was chairman of the board and president of Datronic.  

At all relevant times, the board of directors of Datronic (the Board) was comprised of three directors.  Lopinski, by virtue of his ownership of approximately 95% of the stock of Datronic, appointed all of the directors.  From December 31, 1988, through September 30, 1989, the Board consisted of Lopinski, Stephen S. Buckley, and Gary G. Gebis.  On September 30, 1989, Gebis resigned from the Board, questioning the propriety of various Datronic transactions, including the Bank of California (BankCal) transaction.  On December 12, 1989, Lopinski appointed Edmund C. Lipinski to the Board.  From December 12, 1989, until May 1, 1992, the Board was comprised of Lopinski, Buckley, and Lipinski.

Plaintiffs alleged that during the period of December 12, 1989, to May 1, 1992, the Board "was not an independent body" and "was, in effect, a 'rubber stamp' for the corporate decisions of Lopinski."  Plaintiffs further alleged that Lipinski executed corporate resolutions and other corporate documents when directed to do so by Lopinski, without questioning the propriety of such actions.

In early 1989, Larney and Lopinski located and, on behalf of the Fund, negotiated for the acquisition of an equipment loan portfolio from BankCal.  Larney, acting on behalf of the Fund, bid $40,077,196.06 for the purchase of the loan portfolio.  On June 16, 1989, Larney met with BankCal representatives to negotiate the details of the transaction.  At that time, BankCal offered a 6% discount on the purchase price if Datronic purchased the portfolio without recourse.  Datronic, on behalf of the Fund, accepted the discount offer and entered into a sale and purchase agreement with BankCal for the acquisition of the loan portfolio.  The initial purchase price of $40,077,196.06 was reduced by 6% or $2,404,631.76 to $37,672.564.30.

 Datronic, with the knowledge of Larney and Lopinski, caused $40,077,196.06 belonging to the Fund to be deposited into an account in Datronic's name at BankCal.  BankCal then withdrew $37,672,564.30 from the account as consideration for the sale of the loan portfolio, leaving $2,404,631.76 of the Fund's money remaining in the account.      

Plaintiffs allege that the $2,404,631.76 remaining in the account was converted by Datronic, Lopinski, and Larney for their own use and benefit.  On August 8, 1989, Midland received a consulting fee of $601,157.94 from Datronic.  This money was paid out of the allegedly converted funds.  On that same date, Buckley was paid $100,000 from the allegedly converted funds.

Plaintiffs allege that in October 1989 and again on December 20, 1989, Larney falsely represented to attorneys and auditors for Datronic and the Fund that the $2,404,631.76 retained by Datronic as a result of the BankCal transaction was a fee and not a discount.  On December 18, 1989, a corporate resolution was adopted by the Board approving a May 1, 1989, agreement between Datronic and Midland.  Pursuant to this agreement, Midland would receive a commission of 1 1/2% of the purchase price of all lease portfolios purchased by Datronic or its affiliates. 

On May 2, 1992, both Lopinski and Lipinski resigned from the Board.  On May 18, 1992, a class action lawsuit entitled Ventre v. Datronic Rental Corp., 92 C-3289, was filed in the United States District Court for the Northern District of Illinois (the 
Ventre
 action) on behalf of 35,000 investors in the various limited partnerships managed by Datronic, including the Fund.  The 
Ventre
 action was brought against Datronic and several of Datronic's officers, including Lopinski and Lipinski, alleging RICO (18 U.S.C. §§1962(c),(d)(1994)) claims, violations of Federal securities laws, and fraud.  On March 4, 1993, the district court approved a partial settlement of the 
Ventre
 action, which  provided, 
inter alia
, that LRC would be substituted for Datronic as the general partner of the Fund with full authority to manage its funds and affairs.  

Following its appointment as general partner, LRC, through its accountants and attorneys, investigated various transactions involving the Fund.  As a result of this investigation, a complaint was filed against Midland, Larney, and Lopinski in the circuit court of Cook County on October 12, 1994.  Count I of the complaint sought a judicial accounting of the fees paid to Midland and Larney.  Count II alleged a scheme to defraud in connection with the diversion of $2.4 million of the Fund's money in the BankCal transaction.  

Midland and Larney filed a combined motion to dismiss the October 12, 1994, complaint arguing that the state court did not have subject matter jurisdiction over the lawsuit.  On May 18, 1995, Judge Edwin Berman entered an order dismissing the complaint without prejudice and directing the case to be transferred to the United States District Court for the Northern District of Illinois, Eastern Division.  The order further provided that, "should the District Court decline to exercise jurisdiction the cause shall be returned to this court, all parties shall have the right to assert any and all claims, defenses or motions that are presently pending."  The claims against Larney and Midland were promptly refiled in federal court.  On December 5, 1995, the federal court action against Larney and Midland was dismissed without prejudice for want of federal jurisdiction. 

The two-count complaint in the case 
sub judice
 was filed on December 15, 1995.  Count I sought damages for conversion, and count II sought a judicial accounting of the fees paid to Midland and Larney.  On February 13, 1997, the circuit court dismissed the complaint on limitations grounds but allowed plaintiffs leave to file an amended complaint to more fully plead the adverse domination doctrine.  Plaintiffs filed their amended complaint on March 13, 1997, which was dismissed as time barred because plaintiffs failed to allege sufficient facts to invoke the adverse domination doctrine.  On October 15, 1997, the circuit court entered an order denying plaintiffs' motion for leave to file a second amended complaint because the proposed complaint failed to allege sufficient facts to invoke the adverse domination doctrine.  

On October 31, 1997, plaintiffs filed a one-count third amended complaint alleging conversion.  Larney and Midland filed a motion to dismiss pursuant to section 2-619(a)(5) of the Code of Civil Procedure (the Code)(735 ILCS 5/2-619(a)(5)(West 1996)) contending that the action was barred by the five-year statute of limitations for conversion actions and that the third amended complaint failed to allege facts that would invoke the adverse domination doctrine.  On June 17, 1998, the circuit court dismissed the third amended complaint with prejudice.   

On appeal plaintiffs contend that: (1) the circuit court erred in finding that under these facts the statute of limitations was not tolled by the adverse domination doctrine; (2) the circuit court erred in failing to find that the defendants were equitably estopped from raising the statute of limitations defense; (3) the circuit court erred in applying the reasonable time rule; and (4) the circuit court erred in finding that plaintiffs' December 15, 1995, complaint did not relate back to plaintiffs' October 12, 1994, complaint.

Plaintiffs contend that their December 15, 1995, complaint was timely filed because of the application of the adverse domination doctrine.  Specifically, they contend that the statute of limitations was tolled during the period when the Board was dominated and controlled by wrongdoers (Lopinski and Lipinski).  

Adverse domination is an equitable doctrine that tolls the statute of limitations for claims by a corporation against its officers and directors while the corporation is controlled by those wrongdoing officers or directors.  
Resolution Trust Corp. v. Grant
, 901 P.2d 807 (Okla. 1995); 
Resolution Trust Corp. v. Chapman
, 895 F. Supp. 1072 (C.D. Ill. 1995).  The rationale behind this doctrine is "that control of the board by wrongdoers precludes the possibility for filing suit since these individuals cannot be expected to sue themselves or initiate action contrary to their own interests."  
Federal Deposit Insurance Corp v. Greenwood
, 739 F. Supp. 450, 453 (C.D. Ill. 1989).  

No Illinois court has ever addressed or recognized the adverse domination doctrine.  
Illinois has, however, recognized the discovery rule.  Where the discovery rule applies, the relevant statute of limitations is tolled until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused.  
Hermitage Corp. v. Contractors Adjustment Co
., 166 Ill. 2d 72, 651 N.E.2d 1132 (1995); 
Jackson Jordan, Inc. v. Leydig, Voit & Mayer
, 158 Ill. 2d 240, 633 N.E.2d 627 (1994). 

When the plaintiff is a corporation, it can only learn that it has been injured through its agents.  Generally, an agent's knowledge is imputed to the principal.  However, if the agent's interests are adverse to those of the principal, the agent's knowledge is not imputed to the principal.  
Kinzer v. Fidelity & Deposit Co.
, 273 Ill. App. 3d 211, 652 N.E.2d 20 (1995); 
McKey & Poague, Inc. v. Stackler
, 63 Ill. App. 3d 142, 379 N.E.2d 1198 (1978)
.  

Logical application of the discovery rule and agency law principles leads to recognition of the adverse domination doctrine.  As the court in 
Chapman
 noted:

"The adverse domination doctrine is simply a 

common sense application of the discovery rule to a 

corporate plaintiff.  If a company's board of directors is the only body which can bring a lawsuit on behalf of the company, and the board of directors are the only 

members of the company with the knowledge the company has a cause of action, and the members of the board of directors are the potential defendants in that cause of action, it is simply unreasonable to expect those individuals to sue themselves.  For purposes of the discovery rule, therefore, the company does not know of its cause of action until the wrongdoing board of directors no longer controls it."  
Chapman
, 895 F. Supp. at 1078.

Two Illinois Appellate Court decisions support adoption of the adverse domination doctrine.  In 
Auer v. Wm. Meyer Co.
, 322 Ill. App. 244, 54 N.E.2d 394 (1944), the court found that the controlling director and shareholder had wrongfully paid himself and his wife approximately $400,000 in bonuses, thereby violating his duty as trustee to the minority shareholder.  The minority shareholder was unaware of the violations.  Relying on trust law principles, the court held that the statute of limitations did not bar the minority shareholder's complaint. 

In 
Robert P. Butts & Co. v. Estate of Butts
, 119 Ill. App. 2d 242, 255 N.E.2d 622 (1970)
, the plaintiff insurance company sued the estate of Robert Butts, Jr. (Junior), its former director and secretary-treasurer, for commingling its funds and advancing himself over $95,000.  The plaintiff alleged that it did not discover the commingling and advancement until after Junior's death.  Junior's estate argued that the plaintiff's claims for some of the funds were barred by the five-year statute of limitations.  Relying on the decision in 
Auer
, the court held:

"Where directors of a corporation violate a trust 

in a situation where the directors are in complete 

control of the affairs, and where no notice of the 

violation has reached a minority stockholder, the 

statute of limitations is not a bar to the assertion of the rights of such minority stockholder.  Claimant was 

a family company charged with a public trust.  Until 

the collapse of the claimant company or the death of 

the decedent, there was no one to assert the truth."  

Butts
, 119 Ill. App. 2d at 249. 

 
     

The decisions in 
Butts
 and 
Auer
 teach that, under trust principles, if a director puts his personal goals above those of the company and the company suffers as a result, the statute of limitations will not bar the company from recovering from the director as long as the company had no knowledge of the director's nefarious actions.  Although not relying on trust principles, the adverse domination doctrine similarly teaches that if a director takes an action that harms the corporation and the corporation is unaware of the action, the statute of limitations will not bar the corporation from recovering from the director.  While not directly on point, 
Auer
 and 
Butts
 suggest an acceptance by Illinois courts of the basic equitable principles underlying the adverse domination doctrine.

We now expressly adopt the adverse domination doctrine as part of the Illinois discovery rule.  
Having done so, we must address two issues: (1) How completely must the wrongdoers dominate their corporation in order to trigger the adverse domination doctrine? and (2) How culpable must a director's conduct be before he will be considered a wrongdoer?  

There are two theories regarding what constitutes sufficient domination so that the doctrine will apply, the complete domination theory and the majority domination theory.  Under the complete domination theory, a plaintiff who seeks to toll the statute of limitations must show "full, complete and exclusive control in the directors or officers charged."  
Resolution Trust Corp. v. Franz
, 909 F. Supp. 1128, 1136 (N.D. Ill. 1995).  Under the majority domination theory, a plaintiff must show only that a numerical majority of the board members were wrongdoers during the period the plaintiff seeks to toll the statute.  
Franz
, 909 F. Supp. at 1136.  

In 
Franz
, the Federal District Court for the Northern District of Illinois held that, if faced with the question, our supreme court would adopt the majority domination theory of the adverse domination doctrine.  The 
Franz
 court noted that this theory is the majority rule.  The court further noted that a culpable majority of the board could control nonculpable directors and also most likely control the sources of information and funding necessary to pursue the rights of the corporation.  In light of this ability to control, the 
Franz
 court reasoned that it may be extremely difficult, if not impossible, for the corporation to discover and pursue its rights while a majority of wrongdoers retains control.  We find the reasoning of 
Franz
 to be persuasive.

There are three theories as to the level of culpability  required before a director is considered a wrongdoer.  The "intentional wrongdoing" theory places the culpability threshold at intentional conduct.  
Federal Deposit Insurance Corp. v. Henderson
, 61 F.3d 421 (5th Cir. 1995).  The "at least negligence" theory places the culpability threshold at negligent conduct.  
Resolution Trust Corp. v. Fleischer
, 890 F. Supp. 972 (D. Kan. 1995).  Finally, the "more than negligence" theory places the culpability threshold somewhere between gross negligence and intentional conduct.  
Franz
, 909 F. Supp. at 1137.  We find that the "more than negligence" theory most fully incorporates the principles of the discovery rule.

We expressly adopt the adverse domination doctrine and hold that in order to avail itself of the doctrine a plaintiff must establish that a majority of the directors were wrongdoers during the period the plaintiff seeks to toll the statute, in that they exhibited at least recklessness or gross negligence.

We must now turn to the facts of the case at hand and determine whether plaintiffs have pled sufficient facts to support application of the adverse domination doctrine.  In ruling upon a motion to dismiss brought pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 1996)), a court must accept as true all well-pled facts in the complaint and draw all inferences from those facts that are favorable to the plaintiff.  
Mayfield v. Acme Barrel Co.
, 258 Ill. App. 3d 32, 629 N.E.2d 690 (1994).  Conclusions of fact and law that are not supported by specific factual allegations will not be taken as true.  
Mayfield
, 258 Ill. App. 3d at 34.  Such a motion should only be granted in those cases where there are no material facts in dispute and the defendant is entitled to have the complaint dismissed as a matter of law.  
Mayfield
, 258 Ill. App. 3d at 34.  Our review of a dismissal pursuant to section 2-619 is 
de novo
.  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 619 N.E.2d 732 (1993).

We take the following well-pled facts as true for purposes of defendants' motion to dismiss.  On August 8, 1989, when the alleged conversion occurred, the Board consisted of Gebis, Buckley, and Lopinski.  On September 30, 1989, Gebis resigned from the Board questioning the propriety of the BankCal transaction and the 6% discount.  Lipinski was appointed to the Board on December 12, 1989, to replace Gebis.  From December 12, 1989, until May 1, 1992, the Board consisted of Lopinski, Lipinski, and Buckley.  Lopinski and Lipinski were wrongdoers who participated in a scheme to convert $2.4 million and then cover up the conversion.  Lopinski and Lipinski comprised a majority of the Board from December 12, 1989, until their resignation on May 1, 1992.

Generally, the adverse domination doctrine tolls the statute of limitations so long as the corporation remains under the control of the same wrongdoers against whom the cause of action exists.  See 
Resolution Trust Corp. v. Scaletty
, 257 Kan. 348, 891 P.2d 1110 (1995); 
Federal Deposit Insurance Corp. v. Henderson
, 61 F.3d 421 (5th Cir. 1995); 
Resolution Trust Corp. Fiala
, 870 F. Supp. 962 (E.D. Mo. 1994).  We believe that the fact that two of the defendants in this case were not members of the Board does not automatically render the adverse domination doctrine inapplicable.  Both Larney and Midland were alleged co-

conspirators of Lopinski and Lipinski.  Just as a board comprised of a majority of wrongdoers could not be expected to file suit against itself, such a board could not be expected to file suit against a nonboard-member co-conspirator because such action would necessarily bring to light its own wrongdoing and would be adverse to its own interests.  The rationale behind the adverse domination doctrine applies equally to causes of action against co-conspirators.  We find that the adverse domination doctrine applies to toll the statute of limitations for a cause of action by a corporation against a nonboard-member co-conspirator of the wrongdoing board members.

Defendants contend that the adverse domination doctrine is inapplicable in this case because the statute of limitations began to run on September 30, 1989, when a disinterested majority of the Board, Gebis and Buckley, had knowledge of the alleged conversion.  Plaintiffs contend that despite Gebis' knowledge of the alleged conversion, a majority of the Board was dominated by wrongdoers from December 12, 1989, until May 1, 1992, making it impossible for plaintiffs to pursue a cause of action.  We must decide whether the adverse domination doctrine can remove a cause of action from the statute of limitations for a period of time after the statute has already started to run.  

We have found no cases that have addressed this question.  The Illinois legislature has, however, recognized other situations where a statute of limitations can begin to run, be tolled for a period of time, and then begin to run again.  See 735 ILCS 5/13-208 (West 1996)(statute of limitations is tolled for period of time after cause of action accrues that defendant resides out of state and is not subject to jurisdiction in Illinois).  

Courts that have adopted the adverse domination doctrine have held that it creates a rebuttable presumption that knowledge of the injury will not be available to the corporation as long as the corporation is controlled by wrongdoing officers and directors.  
Resolution Trust Corp. v. Smith
, 872 F. Supp. 805 (D. Or. 1995)
; 
Resolution Trust Corp. v. Grant
, 901 P.2d 807 (Okla. 1995); 
Hecht v. Resolution Trust Corp.
, 333 Md. 324, 635 A.2d 394 (1994).  The corporation cannot have meaningful knowledge with the ability to act on that knowledge until the wrongdoers are no longer in control.  
Resolution Trust Corp. v. Farmer
, 865 F. Supp. 1143 (E.D. Pa. 1994).  This presumption may be rebutted, however, by evidence that someone other than the wrongdoing directors had knowledge of the cause of action and both the ability and the motivation to bring suit.  
Smith
, 872 F. Supp. at 814; 
Grant
, 901 P.2d at 816.  The adverse domination doctrine extends the discovery rule to situations in which a corporation is prevented from discovering a cause of action because there is no one who has the knowledge, ability, and motivation to act for the corporation.  
Hecht
, 333 Md. at 351, 635 A.2d at 408.   Thus, the ability to act on knowledge of the wrong is as important as the knowledge itself.

We find that there is a question of fact regarding whether Gebis, a departing director, had the ability and motivation to act for the corporation.  Once Gebis left the Board he could do nothing to cause the Board to take action.  At that point, the Board was dominated by wrongdoers who could not be expected to sue themselves or their co-conspirators.  Regardless of whether Gebis knew of the conversion, the corporation, dominated by wrongdoers, was not in a position to bring a claim.  Defendants' section 2-619 motion to dismiss should not have been granted when material facts were in dispute.  See 
Mayfield
, 258 Ill. App. 3d at 34.

The adverse domination doctrine is meant to protect corporate plaintiffs who are unable to learn of or pursue their causes of action because of wrongdoing defendants.  That is precisely the situation we are faced with here.  Despite Gebis' knowledge of the conversion, plaintiffs were unable to pursue their cause of action because Gebis resigned and the Board was then  dominated and controlled by wrongdoers.  We should not allow these wrongdoers to further benefit from their tortious behavior by avoiding suit through their subsequent domination of the Board.  Therefore, we find that the adverse domination doctrine can remove a cause of action from the statute of limitations for the period of time that the corporate plaintiff is dominated by wrongdoers after the statute has started to run.   We find that the statute of limitations in this case was tolled from December 12, 1989, when Lipinski was appointed to the Board, until May 1, 1992, when Lopinski and Lipinski resigned from the Board, and that the plaintiffs' December 15, 1995, complaint was timely filed.  The trial court erred in dismissing plaintiffs' third amended complaint as time barred.  

In dismissing the third amended complaint the circuit court, relying on 
Hermitage Corp. v. Contractors Adjustment Co.
, 264 Ill. App. 3d 989, 637 N.E.2d 1201 (1993), 
aff'd in part & rev'd in part
, 166 Ill. 2d 72, 651 N.E.2d 1132 (1995), applied the reasonable time rule, finding that because there still remained in excess of two years within the limitations period when LRC was appointed as general partner of the Fund, plaintiffs could not avail themselves of either the adverse domination doctrine's discovery rule or tolling.  LRC and Datronic contend that the circuit court erred in relying on an appellate court opinion that had been reversed and erred in applying the reasonable time rule.  We agree.

Pursuant to the reasonable time rule, the discovery rule does not toll the statute of limitations where the plaintiff discovers his cause of action within the limitations period and still has a reasonable period of time left within which to file the suit.  
Hermitage
, 264 Ill. App. 3d at 999; 
Van Gessel v. Folds
, 210 Ill. App. 3d 403, 569 N.E.2d 141 (1991).  In 
Hermitage
, the supreme court expressly rejected the reasonable time rule, holding that the discovery rule applies regardless of whether discovery of the injury occurs before or after the applicable statute of limitations has run.  The supreme court reasoned that it is unfair for someone who makes a discovery a few months prior to the running of the statute of limitations to have only a few months to file suit, while someone who makes the discovery a few months after the statute has run would have five years from that date in which to file suit.  The amount of time within which an injured party is able to sue can not depend "on the fortuity of the date of discovery."  
Hermitage
, 166 Ill. 2d at 83.  

Defendants' reliance on
 
Anderson v. Wagner
, 79 Ill. 2d 295, 402 N.E.2d 560 (1979), and 
Barratt v. Goldberg
, 296 Ill. App. 3d 252, 694 N.E.2d 604 (1998),
 is misplaced.  In both cases the reasonable time rule was applied where the fraudulent concealment statute (735 ILCS 5/13-215 (West 1996)) was at issue.  
In 
Hermitage
, the supreme court refused to address 
Anderson
 because the case at bar did not involve the fraudulent concealment statute.  Similarly, in the present case plaintiffs have not plead the fraudulent concealment statute.  Therefore, 
Anderson
 and 
Barratt
 are inapplicable.  We find that the circuit court erred in applying the reasonable time rule in this case.

Because of our disposition of the above issues, we need not discuss plaintiffs' other contentions.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is reversed and this cause is remanded for further proceedings.

Reversed and remanded.

HOFFMAN, P.J., and SOUTH, J., concur.