In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2948

NATIONAL PRODUCTION WORKERS
UNION INSURANCE TRUST,

*Plaintiff-Appellant,*

*v.*

CIGNA CORPORATION (d/b/a CIGNA GROUP INSURANCE)
and LIFE INSURANCE COMPANY OF NORTH AMERICA,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05-cv-5415—**Robert M. Dow, Jr.**, *Judge.*

ARGUED SEPTEMBER 22, 2011—DECIDED DECEMBER 30, 2011

Before BAUER, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* The old adage "don't sign it until you've read it" applies to unions just as it does to individuals. In this case, National Production Workers Union Insurance Trust (the "Trust" or "N.P.W.U.") and Life Insurance Company of North America ("LINA") executed group accident and group life insurance

policies that omitted what the Trust considered to be a critical beneficiary provision. Nonetheless, the Trust's chairman signed the policy and the Trust paid the policy premiums. This dispute arose after LINA refused to pay the Trust a death benefit to which the Trust assumed it was entitled but for which the actual terms of the policy prohibited. In response, the Trust brought suit against LINA and its parent company, Cigna Corporation. LINA countersued for two months' unpaid premiums. The district court dismissed Cigna as a party for lack of personal jurisdiction and granted LINA's motion for summary judgment on all counts. We affirm.

## I. BACKGROUND

In 2003, the Trust sought to implement group accident and group life insurance policies as a benefit for its union members.[1] The Trust desired a life insurance policy that included a beneficiary provision that paid $50,000 to the Trust as a beneficiary and $50,000 to the decedent's beneficiaries, for a total death benefit of $100,000. To find such a policy, the Trust turned to Robert Mondo, the Trust's insurance broker of record from 2001-2005. Based on instructions from Trust officers, Mondo prepared a request for proposal ("RFP"), which he then distributed to various insurance companies, including LINA. Consistent with the Trust's desired beneficiary provision, Mondo's RFP specifically sought a life insur-

---

[1] The life insurance policy, however, is the focus of this dispute.

ance policy where the "Trust is the owner of the policy and also [a] beneficiary."

Two weeks after receiving the RFP, a LINA employee sent Mondo a proposal for both policies. LINA's proposal contained only a summary of the proposed policy's terms, but it expressly cautioned that "[t]his is not a contract," and "the controlling provisions will be in the group insurance policy." The proposal omitted any reference to the Trust's desired beneficiary provision. Evidently impressed, the Trust instructed Mondo to place its group accident and group life insurance coverage with LINA. To finalize the agreement, LINA sent Mondo drafts of the two policies, an application for group insurance, a subscription agreement, and a subscription and joinder agreement. LINA instructed Mondo to obtain Trust approval and signatures on the appropriate documents.

The group policy drafts sent to the Trust contained two provisions relevant to the instant dispute. First, LINA's group life policy draft did not contain the beneficiary provision the Trust deemed to be critical. Instead, the policy provided:

> Death Benefits will be paid to the Insured's named beneficiary, if any, on file at the time of payment. If there is no named beneficiary or surviving beneficiary, Death Benefits will be paid to the first surviving class of the following living relatives: spouse; child or children; mother or father . . . ."

Second, the group insurance application stated, "Payment of the required premium after delivery of the pol-

icy(ies) acts as acceptance of the terms and conditions of the policy(ies)." Apparently content with these terms, Louis M. Pissios, the Trust's chairman, signed the group insurance application and subscription agreements signaling his full acceptance of LINA's offer. In September 2003, the Trust paid the first policy premium, and shortly thereafter, LINA sent Mondo a copy of the final policies. The beneficiary provision in both the draft and final policies was identical, but still different than the Trust's desired beneficiary provision.

As time passed, the Trust made timely premium payments. On May 21, 2004, the Trust made its first claim on the group life policy. Mondo emailed LINA notice that union member Charles Knight had passed away. Six days later, Mondo demanded LINA pay 50% of the death benefit to the Trust. On June 8, 2004, LINA responded to Mondo by highlighting the express terms of the life insurance policy that required LINA to pay the full death benefit to the decedent's beneficiaries. LINA further asserted that unless the decedent named the Trust as a beneficiary, LINA was contractually prohibited from paying any portion of the $100,000 death benefit to the Trust. Pursuant to the terms of the policy, on August 4, 2004, LINA paid Knight's sons a total death benefit of $100,974.60 (the death benefit plus accrued interest). Despite the payment to Knight's sons, Mondo continued to demand that LINA pay the Trust 50% of the death benefit.

The disagreement over the beneficiary provision came to a head in August 2004. At the direction of LINA,

Walter Heindl, senior counsel at Cigna, sent a letter to the Trust providing formal notice that LINA was exercising its contractual right to terminate the group life insurance policy, effective September 30, 2004. In the letter, Heindl also suggested that there had been no "meeting of the minds regarding the design of the group life insurance plan . . . ." Even if the contract permitted payment to the Trust as a beneficiary, Heindl concluded that Illinois state law requires insurers to pay only those beneficiaries designated by the decedent.[2] Upon receiving Heindl's letter, the Trust discontinued paying the monthly premium.

In August 2005, the Trust filed suit in Illinois state court against LINA and Cigna seeking a declaratory judgment and rescission of the contract. In the alternative and relying principally on Heindl's suggestion that there had been "no meeting of the minds," the Trust sought damages based on theories of breach of contract, unjust enrichment, and negligence. LINA removed the action to federal court premised on either federal question or diversity of citizenship subject matter jurisdiction.[3] In January 2006, Judge Hibbler

---

[2] Under Illinois state law, "any sum becoming due by reason of the death of the person insured shall be payable to the beneficiary designated by the person insured." 215 ILCS § 5/231.1(F).

[3] In considering LINA's motion for summary judgment, the district court found that diversity of citizenship provided adequate grounds for subject matter jurisdiction. As such, it expressly declined to resolve LINA's alternative removal

(continued...)

dismissed the negligence claim, but reserved judgment on Cigna's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Following extensive discovery on personal jurisdiction, Magistrate Judge Schenkier dismissed the complaint against Cigna. The case was reassigned to Judge Dow in December 2007.

LINA filed a counterclaim against the Trust for unpaid policy premiums for the months of August and September 2004, and then moved for summary judgment. Judge Dow found an enforceable contract existed as a matter of law, and thus granted LINA's motion for summary judgment on all counts. He then entered judgment in favor of LINA on its counterclaim for $95,059.99. The Trust filed this timely appeal.

## II. ANALYSIS

On appeal, the Trust presents two arguments for our review. First, it contends that there are at least four genuine issues of material fact that should have prevented the district court from entering summary judgment in favor of LINA. Second, the Trust claims that Magistrate Judge Schenkier erred by finding that Cigna was not subject to the district court's personal jurisdiction.

---

[3] (...continued)
theory premised on a federal question. *Nat'l Prod. Workers Union Ins. Trust v. Life Ins. Co. of N. Am.,* No. 05-cv-5415 2010 WL 1292429, at *6-7 (N.D. Ill. Mar. 29, 2010).

*A. Summary Judgment*

The plaintiff principally argues that the district court erred in granting LINA's motion for summary judgment. Namely, the Trust identifies what it considers to be four genuine issues of material fact. First, the Trust highlights Heindl's admission in his August 2004 letter that there had been no "meeting of the minds regarding the design of the group life insurance plan." This statement, the Trust argues, should be given to the factfinder as objective evidence that the two parties never mutually assented to the policy. Second, the Trust questions the district court's conclusion as a matter of law that Mondo's actions as agent bound the Trust to the group policies. In questioning the propriety of Mondo's agency, the Trust asserts that Mondo stopped acting as the Trust's agent following the purported purchase of the group policies, but before he delivered them to the Trust. Alternatively, the Trust claims that LINA knew or should have known that Mondo did not have the authority to bind the Trust to policies that materially deviated from its stated intention. Third, the Trust contends that the factual questions surrounding the legitimacy of the contract should have precluded the district court from granting summary judgment on its unjust enrichment claim. Finally, the Trust argues that the district court erred in granting summary judgment on LINA's breach of contract counterclaim, because there is an open question as to whether LINA actually performed according to the contract's terms.

We review grants of summary judgment *de novo*, *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 690 (7th Cir. 2010),

viewing the record in the light most favorable to the Trust and drawing all reasonable inferences in its favor, *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). Although we have previously cautioned against weighing evidence at summary judgment, *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010), we have also said that "a factual dispute is 'genuine' only if a reasonable jury could find for either party," *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). With that, we turn to the four issues purportedly in dispute.

### 1. Heindl's Letter

The Trust's first two issues of material fact implicate the district court's finding that the Trust and LINA executed a binding contract. Under Illinois state law, an enforceable contract requires an offer, acceptance, consideration, and mutual assent. *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 528 (7th Cir. 2003); *Acad. Chicago Publishers v. Cheever*, 578 N.E.2d 981, 984 (Ill. 1991) (describing mutual assent as the point when the contracting parties have a "meeting of the minds"). In assessing whether contracting parties have mutually assented to a contract, Illinois courts have long cautioned that the parties' subjective intentions are irrelevant. *E.g., Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 640 (Ill. 1977). Rather, courts must evaluate mutual assent based on the objective conduct of the parties. *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992) (stating the parties' "[s]ecret hopes and wishes

count for nothing because the status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves." (quotation marks omitted)). Although the issue of whether a contract existed is usually one for the factfinder, *Prignano v. Prignano*, 934 N.E.2d 89, 100 (Ill. App. Ct. 2010), Illinois courts have used summary judgment to find an enforceable contract when its existence was "clear and free from doubt," *Hedlund & Hanley, LLC v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 876 N.E.2d 1, 5 (Ill. App. Ct. 2007); *see also Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1102 (7th Cir. 1997) (finding that "[u]nder Illinois law, when the basic facts are not in dispute, the existence of a contract is a question of law.").

Here, the Trust argues that Heindl's August 2004 letter suggesting there had been no meeting of the minds constitutes an admission that mutual assent was absent. This evidence, the Trust asserts, "is an admission of a fact which goes to the heart of the ultimate issue," and a jury should have an opportunity to evaluate whether Heindl conceded that a contract between the two parties never existed. Without mutual assent, the Trust argues, a valid contract was never executed.

The Trust's argument is without merit. First, it fails to identify the portions of Heindl's letter that expressly recognized the existence of a contract. For example, Heindl opens the letter by calling attention to the outstanding issues related to the issued group life policy. Additionally, Heindl's closing remarks give notice to the Trust that LINA is terminating the group policy effective September 30, 2004. LINA's contractual right

to terminate the policy presupposes that an enforceable policy existed in the first place.

Instead of focusing on the portions of Heindl's letter that clearly suggest the existence of an enforceable contract, the Trust hangs its hat on Heindl's characterization that there had never been a "meeting of the minds." But, the Trust runs head-first into the long-standing principles of contract law that require courts to evaluate the objective conduct of the parties. Heindl's post-hoc assessment of a contract signed eleven months earlier provides no objective evidence of the parties' intentions *at the time* the contract was signed. Admittedly, Heindl's word choice was unfortunate given how Illinois courts have described mutual assent, but this phrase standing alone does not prove the Trust's contention that a contract never existed. On a motion for summary judgment, LINA satisfied its burden that the parties mutually assented to the group life policy by providing objective evidence that: (1) the Trust's chairman signed copies of the group insurance application and the subscription agreements; (2) the Trust made nine consecutive premium payments without objecting to the policy's terms; and (3) LINA continued to provide group life coverage until September 30, 2004.

## 2. *Mondo's Agency*

The Trust's second summary judgment attack builds on its assertion that an enforceable contract was never executed. Here, the Trust argues that the deficiencies in

Mondo's agency relationship with the Trust prevented the parties from mutually assenting to the group policies. The Trust finds two faults with Mondo. First, the Trust asserts that Mondo's agency terminated immediately following Mondo's purported purchase of the group policies, but before he delivered the policies to the Trust. Alternatively, the Trust suggests that LINA knew or should have known that Mondo was not authorized to bind the Trust to materially deviating policies.

The Trust's first argument is perhaps a nod to the strict duty Illinois law imposes on the insured to review the terms of an issued insurance policy. *See Perelman v. Fisher*, 700 N.E.2d 189, 192 (Ill. App. Ct. 1998) (stating that "Illinois courts have repeatedly held that when an insured sues his or her insurer after failing to note a discrepancy between the policy issued and received and the policy requested or expected, the insured will be bound by the contract terms"). In recognition of this duty, the Trust is left to argue that Mondo did not deliver the policy to the Trust. Without proper delivery, the Trust argues that it cannot be expected to have identified the beneficiary provision discrepancy contained in the final policy.

In assessing the Trust's first agency argument, we must address the threshold question of whether Mondo qualifies as the Trust's agent. Illinois law distinguishes insurance agents from insurance brokers. *See Krause v. Pekin Life Ins. Co.*, 551 N.E.2d 395, 399 (Ill. App. Ct. 1990) (a broker typically "solicits insurance business

from the public under no employment from any special company" while an agent typically "has a fixed and permanent relation to the companies he represents"). In making this distinction, courts have considered the following factors: "(1) who called the intermediary into action; (2) who controls its actions; (3) who pays the intermediary; and (4) whose interests the inter-mediary represents." *Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*, 341 F.3d 644, 654 (7th Cir. 2003). If Mondo is the Trust's agent, then his knowledge and dealings with LINA are imputed to the principal, unless "the agent's interests are adverse to those of the principal." *Lease Resolution Corp. v. Larney*, 719 N.E.2d 165, 170 (Ill. App. Ct. 1999); *see also Pekin Life Ins. Co. v. Schmid Family Irrevocable Trust*, 834 N.E.2d 531, 537 (Ill. App. Ct. 2005). Thus, the Trust is charged with knowledge of the final policy as long as Mondo knew or should have known of the final policy's contents. *Pekin Life Ins. Co.*, 834 N.E.2d at 537.

Before Mondo procured the group policy, it is undisputed that he served as the Trust's insurance broker of record. In that position, Mondo prepared RFPs, obtained insurance quotes, gave Trust officers advice, and communicated with insurance providers, all on behalf of and at the direction of the Trust. Importantly, Mondo remained independent of all insurance companies. Although Mondo received compensation from LINA, Illinois courts give this factor "very little weight." *Royal Maccabees Life Ins. Co. v. Malachinski*, 161 F. Supp. 2d 847, 852 n.2 (N.D. Ill. 2001); *Browder v. Hanley Dawson Cadillac Co.*, 379 N.E.2d 1206, 1212 (Ill. App. Ct. 1978). It

is certainly beyond reproach that Mondo served as the Trust's agent prior to its dealings with LINA. The question facing us is whether Mondo's agency terminated immediately after he procured the policies. The Trust's answer in the affirmative is belied by the record. In fact, the Trust does not dispute that Mondo continued to officially serve as its broker of record until 2005. It is also undisputed that Mondo continued to communicate with LINA after he secured the group policies. Specifically, Mondo emailed LINA with details of the Trust's first claim. Mondo also demanded payment from LINA on behalf of the Trust after LINA rejected the Trust's claim to 50% of Knight's death benefit. These two undisputed facts fly in the face of the Trust's argument that Mondo's agency ended at the exact moment the policy was purchased.

To bolster its argument that Mondo's agency terminated following the procurement of the group policies, the Trust misleadingly points to a September 4, 2003, letter from LINA to Mondo. The Trust construes the letter as evidence that LINA employees "were interested in developing a continuing relationship with Mondo." Such a relationship, the Trust contends, is evidence that Mondo took a position adverse to his principal. Although the letter clearly expresses LINA's desire to build such a relationship with Mondo, LINA's desire is always expressed in the context of Mondo's work for the Trust. In fact, the first full sentence of the letter states, "We are excited about partnering with you to build an effective working relationship on the N.P.W.U. account." Even when drawing

all inferences in the Trust's favor, this letter and the other two undisputed facts provide enough evidence to conclude at summary judgment that Mondo remained in his position as the Trust's agent/broker at all relevant times in this dispute. Accordingly, we hold as a matter of law that Mondo's knowledge of the final policy (imputed to the Trust) constitutes effective delivery to LINA.

The Trust finds a second fault in Mondo's conduct as agent. Without identifying record facts or favorable precedent, the Trust argues that LINA knew or should have known that Mondo's authority did not extend to the procurement of materially deviating policies. But crucially, the Trust ignores the signed group insurance application provision that stated, "Payment of the required premium after delivery of policy(ies) acts as acceptance of the terms and conditions of the policy(ies)." The Trust's chairman signed this application and the Trust made nine consecutive payments without objecting to the terms of the policy. Even if the Trust could show that LINA knew Mondo had exceeded his authority, the record is undisputed on the point that LINA unequivocally knew the Trust had expressly agreed to the proposed policy.

Finally, even if Mondo's agency ended or LINA was not entitled to believe Mondo had authority to bind the Trust, the Trust itself still had access to the policies. In Illinois, an "insured is charged with notice of the contents of an insurance policy, despite the fact that he had not received the policy . . . ." *Schoonover v. Am. Family*

*Ins. Co.*, 572 N.E.2d 1258, 1264 (Ill. App. Ct. 1991); *see also Dobosz v. State Farm Fire & Cas. Co.*, 458 N.E.2d 611, 616 (Ill. App. Ct. 1983). This rule is "especially true if the policy was available and the insured was not prevented from reading it." *Maxton v. Garegnani*, 627 N.E.2d 723, 728 (Ill. App. Ct. 1994). For example, the insured in *Schoonover* never requested nor received a final copy of the insurance policy. *Schoonover*, 572 N.E.2d at 1265. Instead, the insured received a letter from the insurer referencing specific sections of the issued insurance policy. *Id.* at 1263. The Court found that the letter put the insured on notice that a policy had been issued and thus, the insured was charged with knowing the particulars of the policy. *Id.* at 1264.

Like the insured in *Schoonover*, the Trust had actual knowledge that LINA had issued a policy. Here, the Trust paid monthly premiums, the chairman of the Trust signed the group insurance application and subscription agreements, and the Trust submitted a claim against the policy following a qualifying event. Had the Trust requested a copy of the policy, even the quickest of glances would have indicated that "Death Benefits will be paid to the Insured's named beneficiary," not necessarily to the Trust. Thus, even if Mondo's agency was deficient, we hold as a matter of law that the Trust is charged with knowledge of the policy, because it knew LINA had issued the policies.

*3. Unjust Enrichment*

The Trust identifies a third genuine issue of material fact: whether the district court erred in granting LINA's summary judgment motion on the Trust's unjust enrichment claim. But we need not spend much time addressing the merits of this claim because we have long recognized that "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004); *Bd. of Managers of Hidden Lake Townhome Owners Ass'n v. Green Trails Improvement Ass'n*, 934 N.E.2d 636, 644 (Ill. App. Ct. 2010). As just recounted in the two previous sections, LINA and the Trust entered into an enforceable contract for two group insurance policies. Because the Trust has not asserted any claims that fall outside of the bargained-for insurance policies, the Trust is precluded from asserting an unjust enrichment claim.

*4. LINA's Counterclaim*

Lastly, the Trust asserts that the district court improperly granted summary judgment on LINA's breach of contract counterclaim. LINA asserts that the Trust refused to pay the August and September 2004 premiums following the dispute over Knight's death benefit. The district court granted LINA's summary judgment motion and ordered the Trust to pay the past-due premiums plus accrued interest.

To succeed on a breach of contract claim in Illinois, the proponent must prove the existence of a contract, performance under that contract, breach by the counter-party, and an injury resulting from that breach. *Burrell v. City of Mattoon*, 378 F.3d 642, 651 (7th Cir. 2004) (citing *Hickox v. Bell*, 552 N.E.2d 1133, 1143 (Ill. App. Ct. 1990)). The Trust principally takes issue with the perfor-mance element of LINA's claim.[4] Specifically, the Trust suggests that LINA did not provide coverage in any meaningful sense because it failed to notify the Trust that it would not pay the Trust as a beneficiary. As an initial matter, the Trust had knowledge that the policy had been issued and it was thus charged with knowing the contours of the policy. *See Schoonover*, 572 N.E.2d at 1264. Moreover, the Trust's assertion that LINA did not perform contradicts the record. On summary judg-ment, it is undisputed that after LINA received notice of Knight's death, LINA fulfilled its policy obligations by paying Knight's beneficiaries on August 4, 2004. This payment typifies performance under an insurance policy. Additionally, the Trust's assertion that Heindl's August 18, 2004, letter gave it justification to discon-tinue premium payments is unconvincing. Heindl's letter specifically terminated coverage effective Septem-ber 30, 2004. Rather than justify the immediate discon-tinuation of premium payments, Heindl's letter is evi-dence that the insurer remained "on risk" until Septem-

---

[4] Consistent with its earlier arguments, the Trust also disputed whether the parties executed an enforceable con-tract. But for the reasons previously stated, we find that a contract governs this dispute.

ber 30. The Trust offered no evidence to refute LINA's ongoing performance. Thus, we hold that LINA offered enough uncontested breach-of-contract evidence to succeed at summary judgment.

B. *Personal Jurisdiction*

We need not spend much time discussing the Trust's second argument. By way of brief background, the Trust claims that Magistrate Judge Schenkier erred in dismissing the complaint against Cigna for lack of personal jurisdiction. The Trust devotes a significant portion of its brief arguing that Cigna, LINA's parent company, exercises an unusually high degree of control over LINA. This type of control, the trust argues, should have allowed the district court to exercise personal jurisdiction over Cigna. But it is unnecessary for us to address the merits of the Trust's argument, because the Trust's substantive claims against Cigna and LINA are identical. Therefore, we summarily dismiss all claims against Cigna for the same reasons we affirm the grant of summary judgment for LINA.

## III. CONCLUSION

We hold that the Trust has not produced any evidence suggesting that the two parties did not execute an enforceable group insurance contract. Because no reasonable jury could find in the Trust's favor, we AFFIRM the district court's grant of summary judgment on all counts.