JANE DOE *et al.*, Plaintiffs-Appellants, v. NORBERT GLEICHER, Indiv. and as Chairman, Officer, and President of the Center for Human Reproduction, *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—08—2724

Opinion filed June 30, 2009.—Rehearing denied August 5, 2009.

Lorna E. Propes and David R. Nordwall, both of Propes & Kaveny LLC, Lori S. Klingman, of Law Office of Lori S. Klingman, and Frank W. Pirruccello, of Frank W. Pirruccello, LLC, all of Chicago, for appellants.

Donohue Brown Mathewson & Smyth LLC, of Chicago (Stetson F. Atwood, Karen Kies DeGrand, and Caitlin M. O'Connor, of counsel), for appellees Yury Verlinsky and Reproductive Genetics Institute.

Cassiday Schade LLP, of Chicago (James W. Kopriva, Anthony J. Longo, and Julie A. Teuscher, of counsel), for appellees Norbert Gleicher and American Infertility Group of Illinois, Inc.

JUSTICE WOLFSON delivered the opinion of the court:

In this appeal of a circuit court dismissal we tread warily through a procedural thicket. Plaintiffs Jane Doe and John Doe, individually and on behalf of their four minor children, appeal the trial court's order dismissing their complaint, based on the doctrine of *res judicata*. Plaintiffs contend their claims were not barred by *res judicata* because requisite elements were not satisfied. We affirm.

FACTS

Jane and John underwent three *in vitro* fertilization (IVF) treatments with defendant Doctor Norbert Gleicher at defendant fertility clinic, The Center for Human Reproduction (CHR). The first treatment was unsuccessful. The second treatment was successful. Jane and John requested that their residual embryos be ethically destroyed. The third treatment also was successful; however, their child suffers from medical conditions. Jane and John instructed CHR to cryogenically freeze and preserve the 21 embryos remaining from the third treatment.

CHR later filed for bankruptcy and was acquired by a new corporation created by Gleicher, defendant American Fertility Group of Illinois, Inc. (AGI). AGI, however, continued to operate as CHR.

On May 6, 2001, a local television station aired a news segment on embryo adoptions. Gleicher and CHR were featured in the story. During the segment, Gleicher disclosed the actual name of Jane Doe

without her permission. On August 24, 2001, plaintiffs filed a complaint (*Doe I*) against Gleicher, CHR, AGI, and the media involved in the segment. Plaintiffs settled with the media defendants.

On July 3, 2002, plaintiffs filed their first amended complaint against Gleicher, CHR, and AGI (the CHR defendants)[1] alleging breach of contract (count I), breach of confidentiality (count II), breach of fiduciary duty (count III), *res ipsa loquitur* (count IV), fraud (count V), invasion of privacy by public disclosure of private facts (count VI), invasion of privacy by unreasonable intrusion upon the seclusion of another (count VII), intentional infliction of emotional distress (count VIII), and an accounting of the residual embryos from the second and third IVF procedures (count IX). The CHR defendants filed a motion to dismiss.

On December 19, 2002, the trial court granted the CHR defendants' motion to dismiss six of the nine counts. Specifically, the trial court dismissed counts IV through IX: *res ipsa loquitur*, fraud, invasion of privacy by public disclosure of private facts, invasion of privacy by unreasonable intrusion upon the seclusion of another, intentional infliction of emotional distress, and accounting.

As to the remaining counts, the court found plaintiffs properly pled a cause of action for breach of contract (count I) based on the disclosure of Jane's identity during the media broadcast. The court gave plaintiffs leave to amend their breach of contract allegation for the improper disposal of the residual embryos from the second IVF procedure, assuming facts came to light to support their claim during discovery. The trial court addressed plaintiffs' breach of confidentiality (count II) and breach of fiduciary duty (count III) claims together. The court dismissed the breach of fiduciary duty claim. It did not explicitly dismiss the breach of confidentiality claim. However, the court noted the essence of plaintiffs' contentions in these claims was based in negligence or medical malpractice. The court gave plaintiffs leave to amend their complaint "to consolidate these counts and to set forth a claim for negligence or malpractice." The court denied plaintiffs' request for Supreme Court Rule 304(a) language (155 Ill. 2d R. 304(a)).

On January 29, 2003, plaintiffs filed their second amended complaint against the CHR defendants, alleging breach of contract, medical malpractice, conversion of the embryos and related medical records, and invasion of privacy by public disclosure of private facts. They did not reallege any of the dismissed claims.

---

[1]Two other defendants were named in the first amended complaint, but they were not named in this appeal.

In 2004, while discovery was ongoing, AGI, doing business as CHR, was sold to Reproductive Genetics Institute (RGI). Doctor Yuri Verlinsky is the director and chief executive officer (CEO) of RGI. In November 2004, Dr. Verlinsky and RGI transferred plaintiffs' 21 residual embryos from the third IVF treatment to plaintiffs' deoxyribonucleic acid (DNA) expert, per plaintiffs' request. Plaintiffs' DNA expert discovered the embryos were single-celled fertilized eggs instead of the eight-celled fertilized eggs that plaintiffs were purportedly promised by the CHR defendants.

On July 21, 2006, plaintiffs' second amended complaint was voluntarily dismissed pursuant to section 2—1009 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1009) (West 2000)).

On July 20, 2007, plaintiffs filed a verified complaint (*Doe II*) against the CHR defendants, Dr. Verlinsky, and RGI. On January 22, 2008, plaintiffs amended that complaint. They alleged medical malpractice (count I), breach of contract (count II), invasion of privacy by public disclosure of private facts (count III), false light invasion of privacy (count IV), conversion of their embryos and medical records (count V), and negligent spoliation of evidence (count VI). Dr. Verlinksy and RGI were named as defendants only in count V for conversion.

Dr. Gleicher filed a section 2—619.1 motion to dismiss under the doctrine of *res judicata* and for failure to sufficiently plead the causes of action. The trial court proceeded on the *res judicata* contention. AGI filed a motion to join Dr. Gleicher's motion to dismiss. A hearing was held. On May 15, 2008, the trial court granted AGI's motion to join and granted the motion to dismiss based on the doctrine of *res judicata*. On June 26, 2008, Dr. Verlinsky and RGI filed a motion to dismiss, contending *res judicata* barred the claim against them as well. Plaintiffs filed a motion to reconsider the court's May 15, 2008, order. The motion was denied. On September 25, 2008, the court granted Dr. Verlinsky's and RGI's motion to dismiss pursuant to *res judicata*.

DECISION

A motion to dismiss pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2000)) admits the legal sufficiency of the complaint. *Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 413, 794 N.E.2d 902 (2003). However, it asserts an affirmative matter that avoids or defeats the complaint. *Miner*, 342 Ill. App. 3d at 413. On appeal from a section 2—619 dismissal, the questions are whether a genuine issue of material fact exists and whether the defendants are entitled to judgment as a matter of law. *Miner*, 342 Ill. App. 3d at 413. We review a section 2—619 dismissal *de novo*. *Miner*, 342 Ill. App. 3d at 413.

The doctrine of *res judicata* bars any subsequent lawsuits between the same parties or their privies involving the same cause of action where there was a final judgment on the merits rendered by a court of competent jurisdiction. *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 890, 901 N.E.2d 986 (2009). "*Res judicata* is an equitable doctrine that is designed to prevent a multiplicity of lawsuits between the same parties where the facts and issues are the same." *Piagentini*, 387 Ill. App. 3d at 890. "The doctrine extends not only to what was actually decided in the original action, but also to matters which *could have been decided* in that suit." (Emphasis added.) *Rein v. David A. Noyes & Co.*, 72 Ill. 2d 325, 334-35, 665 N.E.2d 1199 (1996). A plaintiff is not permitted to engage in claim splitting. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 474, 889 N.E.2d 210 (2008); *Piagentini*, 387 Ill. App. 3d at 890.

■ For *res judicata* to apply, three requirements must be met: (1) a final adjudication on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of the parties or their privies. *Hudson*, 228 Ill. 2d at 467, citing *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74, 642 N.E.2d 456 (1994).

I. Final Adjudication on the Merits

■ Plaintiffs contend *Doe II* was not barred by the doctrine of *res judicata* because no final judgment on the merits was rendered in *Doe I*. Nothing was final, say the plaintiffs, because the trial court's December 19, 2002, order granted them leave to amend their first amended complaint. They did so by filing a second amended complaint. Then they voluntarily dismissed that complaint without any substantive rulings.

The trial court's December 19, 2002, order dismissed six of the nine counts in *Doe I*. The counts were dismissed because the facts pled did not support the causes of action. The trial court did not give plaintiffs leave to amend those counts.

The trial court's December 19, 2002, order was an adjudication on the merits as to those six dismissed claims. Illinois Supreme Court Rule 273 says:

"Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." 134 Ill. 2d R. 273.

A dismissal pursuant to section 2—619 of the Code is an involuntary dismissal. *DeLuna v. Treister*, 185 Ill. 2d 565, 574, 708 N.E.2d 340

(1999). "The dismissal of a complaint for failure to state a claim is an adjudication on the merits." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 303, 703 N.E.2d 883 (1998).

The December 19, 2002, order was final as to those six dismissed claims. The claims were defective and could not be repled. "A judgment or order is 'final' if it disposes of the rights of the parties, either on the entire case *or on some* definite or separate part of the controversy." (Emphasis added.) *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502, 687 N.E.2d 871 (1997). Claims dismissed without an opportunity to amend are final even if the case is not dismissed in its entirety. See *Hudson*, 228 Ill. 2d at 473-74, citing *Rein*, 172 Ill. 2d at 337-38. The entire theory of recovery was dismissed with each claim, unlike in *Piagentini* where the dismissal of certain allegations under a single theory of recovery did not operate as a final adjudication. *Piagentini*, 387 Ill. App. 3d at 894.

However, because the trial court denied plaintiffs' Rule 304(a) language request, the dismissed claims were not immediately appealable. *Dubina*, 178 Ill. 2d at 502-03 (in absence of Rule 304(a) language, an order dismissing part of the case does not become appealable until all of the claims are final and the action is terminated).

The court did not dismiss the breach of contract claim. Rather, plaintiffs were given leave to amend it. The court dismissed plaintiffs' breach of fiduciary duty claim; however, the court gave plaintiffs the opportunity to amend that claim and the breach of confidentiality claim by combining both into a claim for negligence or medical malpractice. When plaintiffs filed their second amended complaint, they realleged breach of contract. They also alleged medical malpractice, conversion, and invasion of privacy by public disclosure of private facts. Plaintiffs did not reallege the counts dismissed from their first amended complaint. *Reynolds Metal Co. v. V.J. Mattson Co.*, 125 Ill. App. 3d 554, 557-58, 466 N.E.2d 357 (1984) (dismissed claims that are not repled are abandoned).

When plaintiffs voluntarily dismissed the second amended complaint, the litigation was terminated in its entirety. *Dubina*, 178 Ill. 2d at 503. Plaintiffs did not file a motion to vacate that order.

The trial court's December 19, 2002, order dismissing six counts on their merits became appealable on July 21, 2006. *Hudson*, 228 Ill. 2d at 468, citing *Dubina*, 178 Ill. 2d at 503; *Valdovinos v. Luna-Manalac Medical Center, Ltd.*, 307 Ill. App. 3d 528, 537, 718 N.E.2d 612 (1999) (final orders become appealable upon voluntary dismissal); see *Deerfield Management Co. v. Ohio Farmers Insurance Co.*, 174 Ill. App. 3d 837, 840-41, 529 N.E.2d 243 (1988) (an order becomes final in its entirety when it entirely disposes of the litigation). The supreme court in *Dubina* said:

"The order of voluntary dismissal, because it disposed of all matters pending before the circuit court, rendered all orders which were final in nature, but which were not previously appealable, immediately final and appealable. It is well settled that final orders entered in a case become appealable following a voluntary dismissal." *Dubina*, 178 Ill. 2d at 503.

No notice of appeal was filed within 30 days after the July 21, 2006, voluntary dismissal. The lawsuit was at an end. *Dubina*, 178 Ill. 2d at 503.

Plaintiffs contend *Doe II* was a separate lawsuit. However, *res judicata* bars every matter that *could have been raised* in *Doe I. Rein*, 172 Ill. 2d at 334-35; *Reynolds Metal Co.*, 125 Ill. App. 3d at 558 (*res judicata* applies to abandoned claims). Relying on *Rein*, the supreme court in *Hudson* said:

"[A] plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after final judgment has been entered on another part of the case subjects himself to a *res judicata* defense." *Hudson*, 228 Ill. 2d at 473.

In order to determine whether plaintiffs' *Doe II* claims are *res judicata* because they could have been raised in *Doe I*, we must examine the remaining requirements of *res judicata. Rein*, 172 Ill. 2d at 339.

II. Identity of Causes of Action

Plaintiffs concede counts I through IV in *Doe II* for medical malpractice, breach of contract, invasion of privacy by public disclosure of private facts, and false light invasion of privacy are the same causes of action as those in *Doe I* for purposes of *res judicata*. All of the claims are based on the 2001 newscast.

Plaintiffs, however, contend count V for conversion and count VI for negligent spoliation of evidence are different causes of action related to defendants' failure to document, preserve, and return their residual embryos. Plaintiffs contend the *res judicata* effect of the trial court's December 19, 2002, order could not apply to counts V and VI because the counts were based on conduct occurring after the order was entered.

In *River Park, Inc.*, the supreme court adopted the transactional test to determine whether there is an identity to the causes of action at issue. Under the transactional test, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc.*, 184 Ill. 2d at 311. Moreover, a final judgment will bar a plaintiff's claim to all or any

part of a transaction or series of connected transactions from which the action arose. *River Park, Inc.*, 184 Ill. 2d at 311, citing Restatement (Second) of Judgments §24, at 196 (1982). A transaction or series is:

> " 'to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " *River Park, Inc.*, 184 Ill. 2d at 311-12, quoting Restatement (Second) of Judgments §24, at 196 (1982).

First, we find count VI for negligent spoliation of evidence was part of the same transaction as set forth in *Doe I*. In their negligent spoliation claim, plaintiffs contend the CHR defendants "destroyed, misplaced or otherwise negligently mishandled the medical records." As a result, plaintiffs contend they do not know what happened to their residual embryos and cannot determine whether they have any resulting claims. In plaintiffs' *Doe I* accounting claim, they contended "they [had] an absolute and unequivocal right to proof" of what happened to their residual embryos. In its December 19, 2002, order, dismissing plaintiffs' accounting claim, the trial court said, "This court will allow discovery as to existence or disposal of the second set of residual embryos [from the third IVF procedure] so that [p]laintiffs can determine if any cause of action exists."

The operative facts are the same. Plaintiffs concede as much by listing the same factual background to support their complaints. *River Park, Inc.*, 184 Ill. 2d at 313-14. In both *Doe I* and *Doe II*, plaintiffs sought redress, albeit under different causes of action, for what they deem is inappropriate conduct with their embryos. Whether discovery unveiled facts upon which to allege a cause of action does not change the clear fact that the allegations were based upon a series of related transactions.

The passage of time is only one of the *River Park, Inc.* factors used to determine whether a group of facts constitute a transaction. *River Park, Inc.*, 184 Ill. 2d at 312 (time, space, origin, or motivation, or the formation of a convenient trial in line with the parties' expectations, business practices, or usage). We must be "pragmatic" in our assessment. *River Park, Inc.*, 184 Ill. 2d at 312. There is no material difference in the operative facts. *River Park, Inc.*, 184 Ill. 2d at 316.

As to count V, plaintiffs' contend the *Doe II* conversion count could not be based on the same set of facts as the *Doe I* claim because Dr. Verlinsky and RGI did not come into the picture until 2004.

"It is well established that the facts *as they exist at the time of judgment* determine whether *res judicata* bars a subsequent action." (Emphasis added.) *Altair Corp. v. Grand Premier Trust & Investment, Inc.*, 318 Ill. App. 3d 57, 62, 742 N.E.2d 351 (2000).

The "time of judgment" was when plaintiffs' voluntarily dismissed their second amended complaint in *Doe I*. The "time of judgment" was July 21, 2006, because it is the date *Doe I* was dismissed in its entirety. Plaintiffs had two years to amend their complaint and incorporate the allegations against Dr. Verlinsky and RGI. The bases of the conversion counts in *Doe I* and *Doe II* are nearly identical. The only real difference is the allegation that Dr. Verlinsky and RGI "produced" the embryos from the third IVF treatment. Dr. Verlinsky and RGI inherited the embryos from the CHR defendants. Then, they turned them over to plaintiffs' DNA expert. Those embryos were single-celled instead of eight-celled. The causes of action are based on the same set of operative facts, namely, the mishandling of plaintiffs' embryos.

The policy behind *res judicata* is to " 'promote[ ] judicial economy by preventing repetitive litigation and [additionally] protect[ ] parties from being forced to bear the unjust burden of relitigating essentially the same case.' " *Piagentini*, 387 Ill. App. 3d at 890, quoting *Arvia v. Madigan*, 209 Ill. 2d 520, 533, 809 N.E.2d 88 (2004). However, the doctrine of *res judicata* will not be applied where it would create inequitable and unjust results. *Piagentini*, 387 Ill. App. 3d at 890.

There is nothing fundamentally unfair in requiring plaintiffs to amend their complaint to include allegations which came to light two years before they terminated the litigation. Plaintiffs have not offered any good reason for their conduct. None of the equitable exceptions to claim-splitting applies. See *Hudson*, 228 Ill. 2d at 472, citing *Rein*, 172 Ill. 2d at 341.

The second *res judicata* requirement was satisfied.

III. Identity of Parties or Privies

The third *res judicata* factor requires an identity of, or privity between, the parties in the suits.

There is no argument regarding the CHR defendants. They are the same parties in *Doe I* and *Doe II*. Rather, plaintiffs contend their conversion claim against Dr. Verlinsky and RGI was not barred by *res judicata* because Dr. Verlinsky and RGI were not named in *Doe I*. Plaintiffs contend Dr. Verlinsky and RGI are not in privity with the CHR defendants.

"For the purposes of *res judicata*, parties who adequately represent the same legal interests are in privity." *Altair Corp.*, 318 Ill. App. 3d

at 63. "A privy to a judgment or decree is one whose succession to the rights of property thereby affected occurred after institution of the particular suit, and from a party thereto." *Schafer v. Robillard*, 370 Ill. 92, 100, 17 N.E.2d 963 (1938).

Dr. Verlinksy and RGI represent the same legal interests as the CHR defendants. In 2004, RGI purchased AGI, operating as CHR. Dr. Verlinsky is the director and CEO of RGI. The lawsuit was ongoing at the time. Dr. Verlinksy and RGI are privies of the CHR defendants for purposes of *res judicata*. Moreover, plaintiffs nearly concede as much by naming Dr. Verlinksy and RGI with the CHR defendants in the conversion count. Plaintiffs did not differentiate between the defendants in that count.

The third requirement for the application of *res judicata* was satisfied.

CONCLUSION

Plaintiffs' claims in *Doe II* were properly barred under the doctrine of *res judicata*.

We affirm the judgment of the trial court.

Affirmed.

HALL and GARCIA, JJ., concur.