2026 IL App (4th) 4241374

NOS. 4-24-1374, 4-25-0595 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 7, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| DAVIE AND ASSOCIATES DERMATOPATHOLOGY, P.A., | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Tazewell County |
| v.      (No. 4-25-0595) | ) | |
| REDITUS HEALTHCARE, LLC; AARON ROSSI; | ) | No. 21L19 |
| REDITUS LABORATORIES, LLC; AJRMD | ) | |
| MANAGEMENT COMPANY, INC.; AJR MD | ) | |
| CONSULTING, LLC; AJR BRANDS, LLC; PR | ) | |
| MANUFACTURING ENTERPRISES, LLC d/b/a PAL | ) | |
| Health Technologies, LLC; RIVERWAY CRAFT | ) | |
| LABORATORIES LLC; RIVERWAY PROPERTY | ) | |
| MANAGEMENT, LLC; RT ACQUISITION & | ) | |
| INVESTMENTS, LLC; LAWRENCE J. ROSSI JR., | ) | |
| M.D.; TRICOUNTY ANESTHESIA, S.C.; MARK | ) | |
| ROSSI; MICHAEL EVANS; MICHAEL EVANS LAW | ) | |
| GROUP, LLC; MICHAEL EVANS, LTD.; JOHN S. | ) | |
| ELIAS; JANAKI NAIR; and ELIAS MEGINNES & | ) | |
| SEGHETTI, P.C., | ) | |
| Defendants | ) | |
| (Elias Meginnes & Seghetti, P.C.; John Elias; and Janaki | ) | |
| Nair, | ) | |
| Defendants-Appellants). | ) | |
| | ) | |
| | ) | |
| REDITUS LABORATORIES, LLC, | ) | |
| Plaintiff-Appellant, | ) | |
| v.      (No. 4-24-1374) | ) | |
| JOHN ELIAS; JANAKI NAIR; ELIAS, MEGINNES & | ) | |
| SEGHETTI, P.C.; and MARK ROSSI, | ) | No. 24L25 |
| Defendants | ) | |
| (John Elias; Janaki Nair; and Elias, Meginnes & Seghetti, | ) | Honorable |
| P.C. | ) | Stephen A. Kouri, |
| Defendants-Appellees). | ) | Judge Presiding |

JUSTICE LANNERD delivered the judgment of the court, with opinion.
Justices Doherty and Harris concurred in the judgment and opinion.

## OPINION

¶ 1        In February 2021, plaintiff, Davie and Associates Dermatopathology P.A. (DAAD), a member of a Reditus Laboratories, LLC (Reditus), filed a complaint in Tazewell County case No. 21-L-19 (the DAAD litigation) against Reditus and its other corporate members, Aaron Rossi (Rossi) and Reditus Healthcare, LLC (Reditus Health), seeking an accounting and judicial dissolution of Reditus. On February 3, 2022, DAAD filed a second amended complaint asserting various breaches of fiduciary duty by Rossi, including a derivative claim on behalf of Reditus. On February 13, 2022, DAAD sent a letter to one of Reditus's attorneys, accusing its attorneys—defendants John Elias, Janaki Nair, and Elais Meginnes & Seghetti, P.C. (collectively, EMS)—of legal malpractice and aiding and abetting a breach of fiduciary duty. In December 2022, DAAD filed a third amended complaint, adding derivative claims on behalf of Reditus against EMS. Meanwhile, in April 2022, the trial court appointed a receiver for Reditus.

¶ 2        In April 2024, Reditus, through its receiver, filed a complaint in Tazewell County case No. 24-L-25, alleging the same claims of legal malpractice and aiding and abetting a breach of fiduciary duty against EMS and Reditus's corporate counsel (the Reditus litigation). The trial court granted EMS's motion to dismiss, finding the action untimely under the two-year statute of limitations. The court held the limitations period commenced when DAAD first threatened to file suit against EMS, based on the same claims. The receiver argued the doctrine of adverse domination applied and tolled the statute of limitations for claims by a company against its officers while wrongdoing officers controlled the company. However, the court found EMS rebutted the presumption that the adverse domination doctrine applied. Reditus appealed, which we docketed as appellate court case No. 4-24-1374.

¶ 3        In case No. 21-L-19, the trial court granted the receiver's motion to intervene and found DAAD had standing to bring the derivative claims. EMS subsequently moved to dismiss, alleging that, under principles of *res judicata*, the dismissal in case No. 24-L-25 as untimely also required the dismissal of the claims in case No. 21-L-19. The court denied the motion, finding case No. 21-L-19 had been timely filed. The court later entered an order certifying the following question for our review: "Can a dismissal with prejudice on statute of limitations grounds have *res judicata* effect on claims in another lawsuit that are timely filed?" We granted EMS's application for leave to appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019), which we docketed as appellate court case No. 4-25-0595. We later granted Reditus's motion to consolidate the two appeals.

¶ 4        In appeal No. 4-24-1374, we hold the adverse domination doctrine applies and creates a rebuttable presumption and the trial court properly concluded EMS conclusively rebutted the presumption when it showed DAAD had knowledge of the claim and the ability and motivation to file suit as of February 2022.

¶ 5        In appeal No. 4-25-0595, we answer the certified question in the negative and conclude a dismissal with prejudice on statute of limitations grounds *generally* would not have *res judicata* effect on claims in another lawsuit that were timely filed because the causes of action would ordinarily not be identical based on the factual differences in the dates the lawsuits were filed, with one being timely and the other untimely. Additionally, the cases here were not identical in time and origin. Under a pragmatic application of the transactional test and principles of fundamental fairness, the trial court properly found *res judicata* did not apply to bar the DAAD litigation.

¶ 6        Accordingly, we affirm in both cases.

¶ 7                                    I. BACKGROUND

¶ 8         The facts are derived from the complaints, which we take as true at the pleading stage. *Shrock v. Ungaretti & Harris Ltd.*, 2019 IL App (1st) 181698, ¶ 3. We also draw facts from the various filings in both actions, including exhibits attached to the pleadings. Those pleadings are in the records on appeal, and we may also judicially notice them. See *id.*

¶ 9         Reditus was organized in 2019 with two members—DAAD, owned by Dr. James Davie, and Reditus Health, controlled by Rossi, who served as Reditus's sole manager. During the COVID-19 pandemic, Reditus secured lucrative contracts to perform polymerase chain reaction testing with multiple government agencies, universities, and schools.

¶ 10        Rossi, using Reditus's funds, acquired a 40% membership interest in PAL Health Technologies, LLC (PAL), an orthotics manufacturer. The remaining ownership interests in PAL were held by Dr. Gerald Paul and Paul's brother, Rodney Bare. Rossi then funded some of Reditus's expenses with PAL's funds, including payments for laboratory equipment and attorney fees, and transferred $80,000 in cash from PAL to Reditus. As a result, in 2021, Paul, individually and derivatively on behalf of PAL, filed a lawsuit (the Paul litigation) against Rossi.

¶ 11        EMS represented Rossi in the Paul litigation and in connection with a threat from Bare to file similar litigation. EMS also represented Reditus at that time. Defendant Mark Rossi was Reditus's corporate counsel for a time but is not involved in this appeal.

¶ 12        In the spring of 2021, Rossi settled the Paul litigation and related disputes. Under the settlement agreements, Bare was required to assign his interest in PAL to Rossi in exchange for $2 million paid from Reditus, and Paul was required to assign his interest in PAL to Rossi in exchange for $6.8 million, also paid from Reditus. Rossi did not list either payment as a debt owed by him to Reditus and did not transfer either interest he received in PAL to Reditus.

¶ 13        Prior to January 1, 2021, Rossi had an employment agreement with Reditus, dated December 2019, which was drafted by an attorney who is not a party to the current lawsuit. That agreement was superseded by a management services agreement, dated January 1, 2021, between Reditus and AJRMD Management Company, Inc. (AJRMD), a company Rossi incorporated on December 18, 2020. EMS drafted the agreement while also representing Reditus. Under the agreement, Reditus was to pay AJRMD a monthly fee of $83,333, plus 30% of Reditus's net income. Reditus paid AJRMD approximately $12.5 million and incurred a further liability to AJRMD of over $10 million under the agreement.

¶ 14        On February 3, 2021, DAAD sued Rossi and Reditus Health in the DAAD litigation, demanding an accounting and seeking judicial dissolution of Reditus. On February 3, 2022, DAAD filed a second amended complaint, asserting various breaches of fiduciary duty by Rossi, including a derivative claim on behalf of Reditus. DAAD alleged, in part, that Rossi paid himself excessive compensation in violation of Reditus's operating agreement and that he stole funds from Reditus to pay expenses for AJRMD and the settlement of the PAL litigation. DAAD sought the appointment of a receiver.

¶ 15        The record contains a letter attached as an exhibit to EMS's later motion to dismiss, showing that, on February 13, 2022, DAAD sent EMS a demand letter accusing EMS of involvement in Rossi's breaches of fiduciary duties, including allegations Rossi received prohibited compensation and used Reditus's funds to settle the PAL litigation disputes. Also attached was the affidavit of one of the EMS defendants certifying receipt of the letter.

¶ 16        In the letter, DAAD alleged EMS was aware Reditus's operating agreement expressly prohibited Rossi from receiving compensation, but EMS assisted Rossi with reclassifying guaranteed payments as loans and then structured future compensation as consulting

or incentive payments to be made to Rossi's other entities set up by EMS. DAAD characterized those actions as thefts on the part of Rossi. The letter stated, if EMS was unaware of the terms of the operating agreement, it was malpractice to give compensation advice to a member of Reditus, particularly in the middle of litigation, without reviewing the operating agreement. DAAD also stated it was particularly concerning that EMS set up AJRMD as a shell company for the purported recipient of management fees as an attempt to hide Rossi's prohibited compensation. DAAD also accused EMS of being involved in the PAL litigation and aware Rossi paid for the settlement by stealing money from Reditus. DAAD concluded its allegations were easily sufficient to support filing a complaint against EMS derivatively, if not directly, as EMS's efforts were directly harmful to both DAAD and Reditus. DAAD demanded $100 million in damages.

¶ 17      On April 14, 2022, the trial court appointed Adam P. Silverman as the receiver and sole manager of Reditus. In its order, the court authorized and directed the receiver to assume full control of Reditus and institute such actions or proceedings the receiver deemed necessary.

¶ 18      On December 29, 2022, DAAD filed a third amended complaint in the DAAD litigation, asserting derivative legal malpractice claims against EMS arising out of its involvement in the PAL litigation settlements and the management services agreement and added claims of aiding and abetting a breach of fiduciary duty arising out of the same set of facts.

¶ 19      On January 11, 2024, the receiver filed a petition to intervene in the DAAD litigation and take over the derivative claims DAAD had filed against EMS. While that petition was pending, on April 11, 2024, the receiver filed the Reditus litigation alleging the same claims against EMS as those alleged in the DAAD litigation. The complaint acknowledged the receiver had also filed a petition to intervene in the same claims in the DAAD litigation. The complaint noted the petition to intervene had not yet been ruled on but alleged DAAD's claims in that action

against EMS should be dismissed. In the complaint, the receiver stated the Reditus action was filed to assert and preserve Reditus's own claims against EMS and to remove any doubt as to Reditus's right to pursue the claims, regardless of the disposition of DAAD's derivative claims.

¶ 20     EMS moved to dismiss the complaint under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2024)) based on the two-year statute of limitations. EMS alleged Reditus became aware of its claims no later than February 13, 2022, when it sent its demand letter to EMS. EMS noted the adverse domination doctrine created a presumption tolling the running of the limitation period when the company did not know of the injury due to being under the control of wrongdoing officers. However, EMS argued the presumption could be rebutted by evidence that someone other than the wrongdoing officers had knowledge of the cause of action and had the ability and motivation to bring suit. EMS argued the existence of the DAAD litigation and the February 3, 2022, letter rebutted the presumption because it made it clear DAAD knew of the claims at that time and had the ability and motivation to file suit asserting derivative claims.

¶ 21     Reditus responded, arguing that, due to Rossi's control over the company, the adverse domination doctrine tolled the running of the statute of limitations until the receiver was appointed. Reditus maintained it was impossible for it to bring the claims until after the receiver was appointed. It did not address EMS's argument that it rebutted a presumption of adverse domination by showing DAAD knew of the claims and had the ability and motivation to file a derivative suit. Reditus did not dispute the existence of the February 13, 2022, letter or the DAAD litigation.

¶ 22     On September 20, 2024, the trial court held a hearing on EMS's motion to dismiss and the receiver's motion to intervene in the DAAD litigation. The court granted EMS's motion

to dismiss based on *Shrock*, a case in which the Appellate Court, First District, held that a claim accrued and the statutory period began to run when a company became aware of the alleged claim and a presumption of application of the adverse domination was rebutted by previous pleadings in an underlying suit showing the plaintiff was aware of the injury and had the ability and motivation to bring suit. *Shrock*, 2019 IL App (1st) 181698, ¶ 85. The trial court then granted the receiver's motion to intervene in the DAAD litigation. The court found, under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), there was no just reason for delaying either enforcement or appeal. Reditus appealed.

¶ 23    Meanwhile, in the DAAD litigation, EMS had filed a motion to dismiss based on the argument DAAD lacked standing to bring the derivative claims. The trial court found DAAD had standing. Then, in December 2024, EMS filed a motion to dismiss, alleging the DAAD litigation was barred based on principles of *res judicata*. EMS argued the court's finding the suit was untimely in the Reditus litigation was a judgment on the merits with identical causes of action and, thus, principles of *res judicata* barred the claims made in the earlier filed DAAD ligation.

¶ 24    The trial court denied the motion. Applying case law from the Appellate Court, First and Second Districts, the court found *res judicata* applied when two cases involve the same parties, subject matter, and issues. Quoting *Schultz v. Bank of Lyons*, 66 Ill. App. 3d 698, 702 (1978), the court also stated, " 'When comparing the two actions to determine whether the first is a bar to the maintenance of the second, the test to be applied is whether the facts are identical or whether the same evidence would sustain both.' " As to the Reditus and DAAD litigations, the court found the parties and subject matter were the same. However, the court found the overall issue of the application of the limitations period was "a more difficult consideration."

¶ 25    The trial court found there was a lack of precedent addressing the issue of a later

filed suit having *res judicata* effect on an earlier filed suit when one was timely filed and the other was not. The court noted the Second District case of *Greenfield v. Ray Tramm, Inc.*, 242 Ill. App. 3d 320 (1993), which EMS argued applied. The court distinguished that case because it involved two lawsuits that were both untimely filed. Ultimately, the court held the Reditus and DAAD litigations did not present the precise same issue or facts because the DAAD litigation was filed within the two-year limitations period and the Reditus litigation was not.

¶ 26   The trial court later entered an order certifying the following question for interlocutory appeal: "Can a dismissal with prejudice on statute of limitations grounds have *res judicata* effect on claims in another lawsuit that are timely filed?" We granted EMS's application for leave to appeal and Reditus's motion to consolidate the appeals.

¶ 27                                         II. ANALYSIS

¶ 28                          A. The Reditus Litigation, Appeal No. 4-24-1374

¶ 29   On appeal, Reditus contends the trial court erred by granting EMS's motion to dismiss. Reditus argues the complaint was timely filed because the receiver was unable to file anything until after he was appointed on April 14, 2022. The receiver then filed the complaint within two years of that date on April 11, 2024. Reditus also maintains that, under the adverse domination doctrine, the statutory period was tolled while Rossi had control over the company. In doing so, Reditus asks this court to adopt a version of the adverse domination doctrine that does not characterize adverse domination as a rebuttable presumption. In the alternative, Reditus asks that we find the court improperly made findings of fact or that the presumption was not rebutted.

¶ 30   "Whether a claim is barred by the statute of limitations 'is a matter properly raised by a section 2-619 motion to dismiss.' " *M& S Industrial Co. v. Allahverdi*, 2018 IL App (1st) 172028, ¶ 15 (quoting *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008)). When

reviewing a section 2-619 motion to dismiss, we interpret all pleadings and supporting documents in the light most favorable to the nonmoving party and take as true all well-pleaded facts and reasonable inferences derived from the pleadings and supporting documents. *Id.*

¶ 31    Under section 2-619(c) (735 ILCS 5/2-619(c) (West 2024)),

> "[i]f, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion. If a material and genuine disputed question of fact is raised the court may decide the motion upon the affidavits and evidence offered by the parties, or may deny the motion without prejudice to the right to raise the subject matter of the motion by answer and shall so deny it if the action is one in which a party is entitled to a trial by jury and a jury demand has been filed by the opposite party in apt time."

Thus, "[l]ike a summary judgment motion, the trial court can consider the affidavits and evidence submitted by the parties under section 2-619(c)." *Lipscomb v. Sisters of St. Francis Health Services, Inc.*, 343 Ill. App. 3d 1036, 1040 (2003).

¶ 32    Generally, the time at which a party knows or should reasonably know of a claim is a question of fact. *Scheinblum v. Schain Banks Kenny & Schwartz, Ltd.*, 2021 IL App (1st) 200798, ¶ 26. However, where it is apparent from the undisputed facts that only one conclusion can be drawn, the question becomes one of law for the court, and the complaint may be properly dismissed under section 2-619. *Id.*; *Allahverdi*, 2018 IL App (1st) 172028, ¶ 15; *Scottsdale Insurance Co. v. Lakeside Community Committee*, 2016 IL App (1st) 141845, ¶ 26.

¶ 33    "We generally review *de novo* the grant or denial of a section 2-619 motion." *Village of Orion v. Hardi*, 2022 IL App (4th) 220186, ¶ 24. Additionally, we review the

applicability of a statute of limitations to a cause of action *de novo*. *Allahverdi*, 2018 IL App (1st) 172028, ¶ 15.

¶ 34    1. *Appointment of the Receiver and the Discovery Rule*

¶ 35    Reditus first argues it could not discover the injury and file suit until the receiver was appointed in April 2022, essentially maintaining the limitations period did not start at all until that date or that the appointment of a receiver, by itself, would always toll the limitations period.

¶ 36    Section 13-214.3(b) of the Code provides:

"An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2024).

¶ 37    Section 13-214.3(b) incorporates the "discovery rule." *Shrock*, 2019 IL App (1st) 181698, ¶ 49. Under that rule, commencement of the statute of limitations is delayed until the plaintiff knew or reasonably should have known of the injury and that the injury may have been wrongfully caused. *Id.* The critical inquiry when applying the discovery rule is when the plaintiff developed a reasonable belief the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue. *Id.*

¶ 38    Generally, a receiver stands in the shoes of the company and, as such, is merely a custodian that takes the rights, causes, and remedies that were available to those whose interests the receiver was appointed to represent. See *City of Chicago v. Jewellery Tower, LLC*, 2021 IL App (1st) 201189-U, ¶ 55. Thus, " 'the receiver holds possession for the court subject to all previously existing equities, legal interests, and liens on the property.' " *Id.* (quoting *In re Teknek*,

*LLC*, 343 B.R. 850, 874 (Bankr. N.D. Ill. 2006)).

¶ 39　　　　We note Reditus does not provide any legal precedent for its assertion the appointment of a receiver, by itself, would toll the running of the statute of limitations or excuse Reditus from filing suit earlier if it knew of the injury, and we find such an argument lacks merit. When the receiver was appointed, he took over the existing rights and interests of Reditus, including its ability to file the current lawsuit. Thus, the question is not when the receiver was first able to discover the alleged injury and file suit. Instead, it is when Reditus was first able to discover it and file suit. Thus, if Reditus knew or reasonably should have known of the injury and that it may have been wrongfully caused more than two years before the filing of the suit, the suit would be time barred unless Reditus could point to another factor tolling the limitations period. Here, as we discuss next, Reditus argues the adverse domination doctrine does so.

¶ 40　　　　　　　　　　　　　2. *Adverse Domination*

¶ 41　　　　Reditus next contends the adverse domination doctrine tolled the running of the limitations period and the trial court wrongly applied the doctrine as a rebuttable presumption. In the alternative, Reditus argues EMS did not rebut the presumption and the court inappropriately made factual findings.

¶ 42　　　　"Adverse domination is an equitable doctrine that tolls the statute of limitations for claims by a corporation against its officers and directors while the corporation is controlled by those wrongdoing officers or directors." *Lease Resolution Corp. v. Larney*, 308 Ill. App. 3d 80, 86 (1999). "The rationale is simply that controlling managers or directors engaged in corporate wrongdoing can't be expected to sue themselves or tell others about their misconduct." *Shrock*, 2019 IL App (1st) 181698, ¶ 74 (citing *Laney*, 308 Ill. App. 3d at 86).

¶ 43　　　　The adverse domination doctrine applies not only to a company's lawsuit against

its wrongdoing manager or director but also to a company's suit against any noncompany actors who conspired with or aided the wrongdoer. *Id.* ¶ 75. "The reasoning is the same: if a controlling board of directors or managers are unlikely to sue themselves, they are just as unlikely to sue the noncorporate actors who are helping them commit the wrongful conduct, as doing so would obviously shine a light on their own misconduct." *Id.*

¶ 44          a. Adoption of the Doctrine as Creating a Rebuttable Presumption

¶ 45          Reditus first maintains there is a lack of precedent that the adverse domination doctrine creates a rebuttal presumption. We disagree.

¶ 46          This court has previously applied the doctrine without significant analysis or mention of whether the doctrine creates a rebuttable presumption. *Robert P. Butts & Co. v. Estate of Butts*, 119 Ill. App. 2d 242, 249 (1970). However, courts that have since adopted the adverse domination doctrine with more significant analysis have routinely held it creates a rebuttable presumption. See, *e.g.*, *Shrock*, 2019 IL App (1st) 181698, ¶ 77; *Laney*, 308 Ill. App. 3d at 90; *Resolution Trust Corp. v. Grant*, 901 P.2d 807 (Okla. 1995); *Hecht v. Resolution Trust Corp.*, 635 A.2d 394 (Md. 1994); *Alexander v. Sanford*, 325 P.3d 341, 354 (Wash. Ct. App. 2014); *Wilson v. Paine*, 288 S.W.3d 284, 289-90 (Ky. 2009); *Federal Deposit Insurance Corp. v. Smith*, 980 P.2d 141, 145 (Or. 1999); *Resolution Trust Corp. v. Smith*, 872 F. Supp. 805 (D. Or. 1995).

¶ 47          The presumption may be rebutted "by evidence that someone other than the wrongdoing directors had knowledge of the cause of action and both the ability and the motivation to bring suit." *Laney*, 308 Ill. App. 3d at 90. "The adverse domination doctrine extends the discovery rule to situations in which a corporation is prevented from discovering a cause of action because there is no one who has the knowledge, ability, and motivation to act for the corporation." *Id.* "Thus, the ability to act on knowledge of the wrong is as important as the knowledge itself."

*Id.*

¶ 48 Here, Reditus argues Illinois appellate courts, particularly this court in *Butts* and the First District in *Laney*, have adopted the doctrine without application of a rebuttable presumption. However, in *Butts*, the issue of a presumption was not clearly before the court. Moreover, contrary to Reditus's assertion, the *Laney* court specifically addressed the presumption, noting the courts that have adopted the doctrine hold it creates a rebuttable presumption. *Id.* Then, in *Shrock*, the First District specifically applied the doctrine as incorporating a rebuttable presumption. *Shrock*, 2019 IL App (1st) 181698, ¶ 78. As previously noted, the courts that have adopted the adverse domination doctrine have routinely held it creates a rebuttable presumption.

¶ 49 Accordingly, we also hold the adverse domination doctrine creates a rebuttable presumption. Thus, there is a presumption that knowledge of the injury will not be available to the corporate entity, as long as wrongdoing officers, directors, or managers control the company. However, the presumption may be rebutted by evidence that someone other than the wrongdoing directors had knowledge of the cause of action and both the ability and the motivation to bring suit. See, *e.g.*, *Laney*, 308 Ill. App. 3d at 90.

¶ 50 b. Application of the Rebuttable Presumption

¶ 51 Reditus next argues the trial court wrongly found EMS rebutted the presumption of adverse domination. In particular, it argues, until the receiver was appointed, there was no one who had the knowledge, ability, and motivation to bring suit on behalf of the company. EMS, however, argues the existence of the DAAD litigation and its February 13, 2022, letter established it had the requisite knowledge, ability, and motivation to file suit. Reditus did not dispute the facts concerning the existence of the DAAD litigation and the February 13, 2022, letter in the trial court and does not do so on appeal.

¶ 52         In finding the presumption rebutted, the trial court applied *Shrock*, a case we also find persuasive and directly on point. There, the plaintiff, Edward Shrock, was a member of a small, limited liability company, Baby Supermall, LLC (BSM). *Shrock*, 2019 IL App (1st) 181698, ¶ 6. The other members were Robert Meier and a corporation controlled by Meier. *Id.* Meier was BSM's sole manager and majority owner. *Id.* In 2009, Shrock sued Meier for breach of fiduciary duty, and, in 2010, the trial court entered an injunction against Meier, barring him from making certain payments to himself or family members. *Id.* ¶¶ 13, 15. Over several years following the order entering the injunction, Shrock filed multiple pleadings asserting violations of the injunction, and Meier field responses through his attorneys. *Id.* ¶¶ 16-19. In 2013, through his attorneys, Meier filed a motion to modify the injunction, and Shrock objected with allegations Meier was continuing to violate it. *Id.* ¶ 20. In 2016, Shrock and BSM filed a legal malpractice suit alleging Meier's attorneys wrongfully assisted Meier in his violations of the injunction. *Id.* ¶¶ 40, 47, 51. The court dismissed the complaint as time barred under the two-year statute of limitations applicable to claims against attorneys for conduct arising out of their provision of professional services. *Id.* ¶ 41.

¶ 53         The First District affirmed. *Id.* ¶ 86. The court first noted it drew its facts from the complaint, which it took as true at the pleading stage, and judicial notice of various filings in underlying cases that prompted the lawsuit. The court then held the adverse domination doctrine had been rebutted by the pleadings Shrock filed in the underlying lawsuit. *Id.* ¶ 78. The court noted the question was whether someone other than the wrongdoing directors had knowledge of the cause of action and both the ability and motivation to bring suit. *Id.* ¶ 77. Given the pleadings in the underlying suit, the court found it could not be seriously disputed that someone other than the wrongdoing directors had knowledge of the cause of action. There was also no doubt Shrock had the motivation to bring suit when he had actually filed suit. *Id.* ¶¶ 77-78. As to whether Shrock

had the ability to pursue claims against the law firm on behalf of BSM, the court found Shrock had the ability to file derivative claims. Thus, because Shrock had the knowledge, ability, and motivation to bring a cause of action against Meier's attorneys long before the two-year limitations period expired, the adverse domination presumption was rebutted. *Id.* ¶ 85. In a later, related case, the appellate court again applied pleadings from the underlying action to find the action was time barred. *Shrock v. Union National Bank*, 2021 IL App (1st) 200653-U, ¶¶ 36-39.

¶ 54       Here, as in *Shrock*, the record contains documents conclusively showing DAAD had the knowledge, ability, and motivation to file suit before the two-year limitations period expired. In February 2021, DAAD first filed the DAAD litigation demanding an accounting and seeking judicial dissolution of Reditus. On February 3, 2022, DAAD filed a second amended complaint asserting various breaches of fiduciary duty by Rossi, including a derivative claim on behalf of Reditus. DAAD alleged, in part, that Rossi paid himself excessive compensation in violation of Reditus's operating agreement and stole funds from Reditus to pay expenses for AJRMD and the settlement of the PAL litigation. Shortly after, on February 13, 2022, DAAD sent EMS a demand letter, accusing EMS of involvement in Rossi's breaches of fiduciary duties, including allegations Rossi received prohibited compensation and wrongly used Reditus's funds to settle the PAL litigation. The letter also specifically noted DAAD's belief it could file suit and include derivative claims. That letter was included with EMS's motion to dismiss, along with the affidavit of one of the EMS defendants certifying receipt of the letter. Reditus has not disputed the existence of the letter or any of the underlying pleadings. DAAD later added the claims to its lawsuit in December 2022.

¶ 55       Reditus contends there are factual questions concerning DAAD's knowledge and motivation to file suit to protect the company. However, the letter clearly shows DAAD had

knowledge of the claims by February 13, 2022, at the latest. DAAD's ability and motivation to file suit was clear and undisputed at that time because DAAD had already previously filed related claims, including a derivative claim, essentially threatened to sue in the letter to EMS by noting it could file derivative claims, and then actually did file suit asserting derivative claims against EMS. That DAAD did not add the claims against EMS until December 2022 is immaterial because DAAD's previously filed litigation and letter to EMS clearly showed the knowledge, ability, and motivation to discover its claims and file a lawsuit by February 13, 2022, at the latest, when it demanded damages from EMS in connection with the underlying action. Thus, the trial court found EMS rebutted the adverse domination presumption as a matter of law and the matter was barred by the two-year limitations period.

¶ 56        Nevertheless, Reditus argues an evidentiary hearing is required and the trial court made improper factual findings. But the court took as true all facts presented to it by Reditus. It assumed the facts showed the presumption applied and then applied the undisputed facts shown by the February 13, 2022, letter and underlying pleadings concerning DAAD's lawsuit that were provided with EMS's motion to dismiss to determine the presumption was rebutted. Reditus did not respond with any dispute to the accuracy of those materials or provide anything to counter EMS's factual claims. Reditus also does not dispute the accuracy of those materials on appeal. The court could consider the affidavits and evidence submitted by the parties with their pleadings. See *Lipscomb*, 343 Ill. App. 3d at 1042 (considering an affidavit filed with a motion to dismiss). As there were no contested facts, at that point, the matter was a question of law for the trial court, which determined the letter and underlying lawsuit conclusively rebutted the presumption. As previously discussed, we agree. Accordingly, in appeal No. 4-24-1374, we affirm.

¶ 57                B. The DAAD Litigation, Appeal No. 4-25-0595

- 17 -

¶ 58    In the DAAD appeal, EMS contends the trial court erred in declining to apply the doctrine of *res judicata* to find the action time barred. EMS argues the court's finding the suit untimely filed in the Reditus litigation was a judgment on the merits and principles of *res judicata* then barred the same claims made in the DAAD litigation. We granted leave to appeal on the following certified question: "Can a dismissal with prejudice on statute of limitations grounds have *res judicata* effect on claims in another lawsuit that are timely filed?"

¶ 59    "Rule 308(a) provides a procedure for obtaining review of an interlocutory order not otherwise appealable when the trial court finds the order 'involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.' " *Scott v. American Alliance Casualty Co.*, 2024 IL App (4th) 231305, ¶ 15 (quoting Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019)). "Appellate review under Rule 308 is limited to the certified question of law presented, and the propriety of any particular order of the trial court is not before the appellate court." *Id.* "However, in the interest of judicial economy and reaching an equitable result, a reviewing court may go beyond the certified question and consider the appropriateness of the order giving rise to an appeal." *Walker v. Carnival Cruise Lines, Inc.*, 383 Ill. App. 3d 129, 133 (2008). We do so here.

¶ 60    Typically, "[t]he doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any *subsequent* actions between the same parties or their privies on the same cause of action." (Emphasis added). *Young v. Wilkinson*, 2022 IL App (4th) 220302, ¶ 34. Here, however, we are faced with the more unusual argument that the judgment in a later action should bar claims made in an earlier one.

¶ 61    "*Res judicata* bars not only what was actually decided in the first action but also

those matters that could have been decided." (Emphases omitted.) *Id.* "The policies underlying the doctrine are to promote judicial economy and to protect defendants from the burden of having to relitigate essentially the same claim." *Id.*

¶ 62        "Three requirements must be met for *res judicata* to apply: (1) an identity of parties or their privies, (2) a final judgment on the merits rendered by a court of competent jurisdiction, and (3) an identity of cause of action." *Id.* ¶ 36. "The burden of establishing *res judicata* is upon the party invoking it." *Id.* "Whether a claim is barred under the doctrine of *res judicata* is a question of law, which we review *de novo*." *Id.*

¶ 63        Here, the parties do not dispute there is an identity of parties or their privies. However, EMS contends there is not a final judgment on the merits because the issues of the running of the limitations period and application of the adverse domination doctrine were not final pending the appeal of the Reditus litigation. However, we have now determined those issues. Further, as we later note, we need not reach that issue because we determine there is not an identity of causes of action.

¶ 64        "Identity of the causes of action may be determined from the record as well as from the pleadings in both causes." *Id.* ¶ 42. "A cause of action is defined by the facts that give rise to a right to relief." *Id.* We note here the trial court applied *Schultz* and stated, "When comparing the two actions to determine whether the first is a bar to the maintenance of the second, the test to be applied is whether the facts are identical or whether the same evidence would sustain both." However, Illinois has since adopted the "transactional test" to determine whether separate claims constitute the same cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 310 (1998).

¶ 65        Under the transactional test, "separate claims will be considered the same cause of

action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* at 311. Thus, the transactional test considers whether the claims arise from the same core of operative facts. *Id.* This depends in turn on a "pragmatic" consideration of whether the facts are related in time, space, origin, or motivation and form a convenient trial unit. *Id.* at 312. Also considered is whether treatment of the facts as a unit conforms to the parties' expectations or business understanding or usage. *Id.*

¶ 66        Relying on the Second District case of *Greenfield*, EMS argues the requirement of identity of causes of action for application of *res judicata* was met and the dismissal of the claims in the Reditus litigation as time barred required dismissal of the earlier filed claims in the DAAD litigation, even though those claims were timely filed.

¶ 67        In *Greenfield*, the plaintiff filed a lawsuit alleging negligence but named the wrong defendant. *Greenfield*, 242 Ill. App. 3d at 322. After the limitations period ran, the plaintiff sought to add the correct defendant. The plaintiff also filed a second lawsuit against the correct defendant. *Id.* at 323. The trial court dismissed the second lawsuit, finding it was time barred. The court then dismissed the first lawsuit as also time barred. *Id.* at 323-24.

¶ 68        On appeal from the dismissal of the first lawsuit, the Second District affirmed. The court held the addition of the correct defendant did not relate back to the filing date. The court also held *res judicata* applied. *Id.* at 325-27. The court held the cases had identical parties and allegations and the dismissal of the second lawsuit barred further litigation of the first. The court then stated:

            "Nevertheless, plaintiff contends that *res judicata* cannot operate to bar a
            previously filed suit. Plaintiff relies on the fact that [the later filed and first
            dismissed cause] was filed after plaintiff filed [the first case]. Consequently,

- 20 -

plaintiff contends that *res judicata* cannot operate to bar the previously filed suit ***. Interestingly, plaintiff cites a case which specifically refutes this contention. *Singer v. Brookman*[, 217 Ill. App. 3d 870, 875 (1991)], states:

> 'The doctrine of *res judicata* *** requires a dismissal with prejudice where an action is barred by a prior *judgment*. In order for this doctrine of preclusion by prior judgment to apply, there must be an identity of parties or their privies, identity of the cause of action and subject matter, and a final judgment on the merits in the earlier suit.' (Emphasis added.) [Citation.] This language implies that once there is final judgment, causes of action containing identical parties, subject matter, and issues are precluded by the doctrine of *res judicata*. It is the timing of the judgment, not the timing of the filing, which controls the doctrine." *Id.* at 327 (citing *Kewanee Lumber & Supply Co. v. Guest Laundry Co.*, 306 Ill. App. 491, 498 (1940)).

¶ 69    Here, the trial court distinguished *Greenfield* because there, both actions were untimely filed. The court also noted the two cases did not present the precise same issue or facts because the DAAD litigation was filed within the limitations period and the Reditus litigation was not. We agree that *Greenfield* is distinguishable.

¶ 70    First, while *Greenfield* noted the timing of the judgment—instead of the timing of the filing—controls, ultimately, *Greenfield* merely rejected the argument that a later filed action could never have *res judicata* effect on an earlier filed one. Thus, *Greenfield* held that, in the case before it, the judgment in the later filed action could have *res judicata* effect on the earlier filed action when the causes of action were identical. But *Greenfield* did not hold that anytime a second action is dismissed based on a statute of limitation, a first action must also be dismissed, even if it

was timely filed. EMS essentially asks us to read *Greenfield* broadly to create such a rule. We decline the invitation to do so. Instead, we address whether there were identical causes of action in the Reditus and DAAD ligations.

¶ 71        As to identity of causes of action, *Greenfield* is factually distinguishable because both actions in *Greenfield* were untimely filed. Thus, there was no difference in the applicable law and facts at issue in *Greenfield*. Here, however, the lawsuits were filed on different dates, with the DAAD litigation being timely filed and the Reditus litigation untimely filed. Based on those differences in dates, *Greenfield* does not factually apply here.

¶ 72        EMS also relies in part on *Avery v. Auto-Pro, Inc.*, 313 Ill. App. 3d 747 (2000), to argue the timeliness of a claim is immaterial to a determination of whether *res judicata* applies. However, *Avery* involved the dismissal of a counterclaim filed outside of the limitations period and the application of *res judicata* when the same counterclaim was filed later. *Id.* at 750-51. Because the appellate court held the claim was barred by *res judicata*, it stated it need not address whether the later filed counterclaim was timely filed. *Id.* at 751. *Avery* did not address identity of causes of action between a case that was timely filed by one party and a later filed related case that was untimely filed by another. Thus, here, *Avery* does not require a finding that *res judicata* bars the DAAD litigation. As previously stated, we decline EMS's invitation to hold that anytime a second action is dismissed based on a statute of limitations, a first action must also be dismissed, even if it was timely filed.

¶ 73        EMS next argues, under the transactional test, the identity of causes of action was identical. We disagree.

¶ 74        Here, there is not a "single group of operative facts" when the DAAD litigation involved derivative claims timely filed by one party and the Reditus litigation involved a direct

lawsuit untimely filed by another party. In particular, the facts at issue regarding application of the statute of limitations are not related in time or origin when the lawsuits were filed on different dates by different entities acting in different capacities, making one suit timely and the other not. The underlying substantive claims may essentially be the same, but the facts concerning the judgments of how the statute of limitations applied to those claims are not.

¶ 75 Finally, we note we must be "pragmatic" in our application of the transactional test. *River Park, Inc.*, 184 Ill. 2d at 312. The policy behind *res judicata* is to promote judicial economy by preventing repetitive litigation and protecting parties from being forced to bear the unjust burden of relitigating essentially the same case. *Doe v. Gleicher*, 393 Ill. App. 3d 31, 39 (2009). "However, the doctrine of *res judicata* will not be applied where it would create inequitable and unjust results" *Id.* To hold *res judicata* bars the timely filed claims in the DAAD litigation would create inequitable and unjust results, since DAAD followed proper procedure and could not control the actions of the receiver regarding the Reditus ligation. Further, concerns of repetitive litigation are not at issue here because the trial court properly dismissed the Reditus litigation and allowed the receiver to intervene in the DAAD litigation. Therefore, the claims are now appropriately presented in only one lawsuit.

¶ 76 Thus, we answer the certified question in this case in the negative and conclude a dismissal with prejudice on statute of limitations grounds *generally* would not have *res judicata* effect on claims in another lawsuit that were timely filed because the causes of action would ordinarily not be identical based on the factual differences in the dates the lawsuits were filed, with one being timely and the other untimely. EMS argues such a holding nullifies application of *res judicata* when a statute of limitations is at issue. However, we cannot and will not speculate on factual scenarios not presented by the current appeal. We emphasize we do not hold that a

dismissal on statute of limitations grounds could *never* have *res judicata* effect. Instead, we note it generally would not have *res judicata* effect and does not in the current appeal. Here, the cases and the claims within them were not identical in time and origin. Under a pragmatic application of the transactional test and principles of fundamental fairness, therefore, we conclude the trial court properly found *res judicata* did not apply to bar the DAAD litigation. Accordingly, in appeal No. 4-25-0595, we affirm.

¶ 77        We note Reditus argues alternate reasons to affirm the trial court's determination that *res judicata* did not apply. However, those arguments are not central to the certified question. Given that we affirm based on our determination there was no identity of causes of action, we need not and do not address Reditus's alternate arguments.

¶ 78                                    III. CONCLUSION

¶ 79        Having answered the certified question in the negative in in appeal No. 4-25-0595, for the foregoing reasons, the judgments of the trial court are affirmed in appeal Nos. 4-25-0595 and 4-24-1374.

¶ 80        Certified question answered.

¶ 81        Affirmed.

*Davie & Associates Dermatopathology, P.A., v. Reditus Healthcare, LLC*,
**2025 IL App (4th) 241374**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Tazewell County, Nos. 21-L-19, 24-L-25; the Hon. Stephen A. Kouri, Judge, presiding. |
| **Attorneys for Appellant:** | Robert J. Slobig and Bradley J. Axel, of Torshen, Slobig & Axel, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Joseph R. Marconi, Victor J. Pioli, Ramses Jalalpour, and Adam J. Sedia, of Johnson & Bell, Ltd., of Chicago, for appellees. |